**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION**

| | | |
|---|---|---|
| LEROY WHITE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | 5:02-cv-00524-KOB-JEO |
| MICHAEL HALEY, Commissioner, | ) | |
| Alabama Department of Corrections, and | ) | |
| THE ATTORNEY GENERAL OF THE | ) | |
| STATE OF ALABAMA, | ) | |
| | ) | |
| Respondents. | ) | |

**<u>MEMORANDUM OPINION</u>**

**TABLE OF CONTENTS**

**I.  BACKGROUND**................................................................................................**3**

     **A.  Offense Conduct**........................................................................................**3**
     **B.  Procedural Background**...........................................................................**4**

**II.  PROCEDURAL DEFAULT**.........................................................................**17**

     **A.  The Law**...................................................................................................**17**
     **B.  Discussion**..............................................................................................**19**

**III.  HABEAS CORPUS REVIEW**....................................................................**20**

     **A.  The Statutory Standard of Review**......................................................**20**
     **B.  Ineffective Assistance of Counsel Standard**........................................**22**
     **C.  Discussion of the Merits**.......................................................................**25**

          **1.  Purported Hindsight Review and Erroneous Determination
             that Reasonable Minds Could Differ About the Law**...................**26**
          **2.  The State Courts Purportedly Erred as a Matter of Law
             in Concluding that Trial Counsel Reasonably Relied on His
             Legal Research**................................................................................**28**

               **a.  Alabama Law**.......................................................................**28**
               **b.  The *Cladd* Decision**...........................................................**36**

  **c.  Purported Misrepresentations of the Law**..........................................41

   **i.  Advice to Reject the Plea**........................................41
   **ii.  Purported Lack of Pretrial Investigation**............................43
   **iii.  Purported Attempt at Jury Nullification**............................45

  **d.  Ability to Intelligently Evaluate the Advice Given**........................46

   **i.  Citation to *Weitzel***............................................47
   **ii.  Later Decisions from Other States**....................................48
   **iii.  General Legal Principles**............................................48
   **iv.  *Cladd***............................................................49
   **v.  The Alabama Court's Findings of Fact**............................50

 **3.  Prejudice**........................................................................52

**IV.  CONCLUSION**..........................................................................54

## I. BACKGROUND

### A.  Offense Conduct

The essential facts underlying the conviction, as taken from the Alabama Court of

Criminal Appeals' opinion upholding the conviction, are as follows:

The victim in this case, Ruby White, was the estranged wife of the defendant, Leroy White.  The parties had separated during the month of August or September, 1988, when Ruby White left the marital dwelling at 2217 Evans Drive, Huntsville, Alabama, and moved into a shelter for abused spouses.  During previous difficulties between the defendant and his wife, the defendant had shot her in the leg.

Following their separation, Ruby White employed an attorney and filed a petition for divorce.  A pendente lite hearing was scheduled at which time the defendant and Ruby White verbally agreed that the defendant would move out of the dwelling at 2217 Evans Drive and would allow Ruby White and her two children to return to the dwelling.  The residence at 2217 Evans Drive was owned solely by Ruby White prior to her marriage to the defendant.

After her return to 2217 Evans Drive, Ruby White changed the door locks and her sister, Stella Lanier, moved in with Ruby and her two children.  The children were Brian Smith, age 16, son of Ruby White and a former husband [John Smith] and Latonia White, age 17 months, daughter of Ruby White and Leroy White.

On the afternoon of October 17, 1988, the defendant, Leroy White, purchased a shotgun from Blue Springs Pawn Shop.  After purchasing the shotgun, he went to Larry's Pawn Shop and purchased some double-aught shotgun shells.  After making these purchases, the defendant drove to the home of Ruby White at 2217 Evans Drive.  The testimony indicated that the defendant had been drinking alcoholic beverages during the day.  On his first arrival at the home on Evans Drive, the defendant pulled his car into the driveway and almost ran over his 17 month old daughter.  Stella Lanier observed this and the defendant and Stella got into an argument about his driving.  The defendant then placed his daughter in the car and drove off.

At approximately 5:15 p.m. the defendant returned to the Evans Drive residence of his wife and exited his vehicle armed with a [12 gauge] shotgun and a [.38 caliber] pistol.  Ruby and Stella observed the defendant pull up and get out of his car with the shotgun and pistol.  They went into the house and locked the

doors.  Brian Smith was sent to a rear bedroom by his mother and told to hide under the bed.  Latonia White was still in the defendant's car.

The defendant then came up to the front door of 2217 Evans Drive and finding it locked, shot the glass out of the storm door and shot the lock off the wooden front door.  He then kicked the door open, entered the house and began to scuffle with Ruby and her sister, Stella.  As Stella tried to flee the house, the defendant ran out on the front porch and shot four times.  Stella fell in the yard [having been wounded in her right arm and right leg].

The defendant then went back in the house and confronted Ruby who was begging and pleading for her life.  After a brief confrontation, Ruby ran out into the front yard at which time the defendant told her to stop or he would blow her legs off.  She stopped and the defendant confronted her with the shotgun.  Ruby grabbed the barrel of the shotgun and continued to plead for her life.  Her daughter Latonia was in the defendant's car and her son Brian was in the house.

Finally, the defendant shoved Ruby away from the gun and fired at her at point blank range with the double-aught buckshot.  The blast tore the flesh from her right arm as she tried to shield herself and the pellets penetrated her chest and abdomen.  Ruby fell to the ground moaning but she was not dead.  Testimony revealed that the defendant then went back into the house and called for Brian to come out of his hiding place.  When Brian came out, the defendant told him to tell his daddy that ". . . when I get out of this, I'm going to kill him, too."

The defendant then went back outside, walked up to where Ruby lay on the ground moaning and said, "Bitch, you ain't dead yet."  He then went to his car, re-loaded the shotgun, picked up his 17 month old daughter and walked back over to where Ruby lay on the ground.  As he placed the muzzle of the shotgun to her neck, he said, "Bitch, this is the last thing you will see."  He then smiled and pulled the trigger.

The blast tore a hole in Ruby's neck where the gun shot entered and blew off the back side of her head where it exited.

At this time, the police arrived and the defendant surrendered without incident.

*White v. State*, 587 So. 2d 1218, 1222-23 (Ala. Crim. App. 1990) (alterations in original).

**B.  Procedural Background**

On December 14, 1988, White was indicted for the capital offense of murder "during a

burglary" in violation of *Alabama Code* § 13A-5-40(a)(4) (1975).  White offered to plead guilty to simple murder, hoping "to avoid the death penalty and, if possible, a capital murder conviction so that [he] could see [his] daughter."  (C.R. at 2475).[1]  The state refused, and instead offered life without parole if White would plead guilty to the capital offense as charged.  White declined the counteroffer and went to trial on a theory that he hoped would defeat the burglary element of the charge and avoid a capital conviction.  Under this theory, White would avoid the burglary conviction in one of two ways: First, he hoped to convince the trial judge that as a matter of law that a husband could not, in the absence of a court-issued restraining order, be convicted of burglarizing his wife's home – an issue that was unsettled in Alabama at the time of his trial.  In the alternative, White hoped to convince the jury that he was still privileged to enter his wife's house (the "marital residence"), even if the law did not shield all estranged husbands from a burglary charge.  To do this, he would demonstrate that inter-spousal arguments, like the one that caused him to move out of his wife's home just before the murder, were not uncommon in his marriage to Mrs. White because the couple had similar "breakups" numerous times in the past, each of which ended when the ejected spouse would return to the home and make amends.  (See C.R. 1722-25).

Neither aspect of the defense theory was successful at trial, and White was convicted of capital murder.  The jury recommended life imprisonment, but the trial judge overrode the recommendation and sentenced White to death.  On direct appeal, the Alabama Court of Criminal Appeals affirmed the conviction, and specifically ruled on the previously open question

---

[1] References herein to "C.R. ____" are to the state court record on collateral appeal, which is located beginning at document 14.  The page numbers are located in the top right-hand corner of each page.

of whether a man may be convicted of burglarizing his wife's separately owned house while they are unofficially separated, holding that a man could be convicted of burglary in such a situation. *White*, 587 So. 2d at 1222-27.  The Alabama Supreme Court affirmed both the conviction and the ruling of the Court of Criminal Appeals.  *Ex parte White*, 587 So. 2d 1236 (Ala. 1991).  The United States Supreme Court denied *certiorari*.

White then filed a post-conviction petition, pursuant to Rule 32 of the ALABAMA RULES OF CRIMINAL PROCEDURE raising, *inter alia,* the same claim at issue here – that his defense counsel, Randall Gladden, was ineffective in his representation of him at the trial court level during the plea bargaining process.  Specifically, he asserted that "he refused the prosecution's plea offer because Gladden conveyed to White the results of Gladden's faulty legal research . . . . that he could not be convicted of burglary[, which elevated the murder to capital murder], because White was married to the victim and there was no formal separation agreement nor court order preventing White from entering the marital residence where the alleged burglary occurred." *White v. State*, CR-98-0722, slip op. at 6.[2]  The Madison County Circuit Court denied the Rule 32 petition.  White again appealed to the Alabama Court of Criminal Appeals.  In considering the ineffective assistance of counsel at plea bargaining claim, the court adopted the following findings of the circuit court:

> Gladden's representation of White began after being contacted by members of White's family.  He agreed to do an initial evaluation of the case for $500.  (Gladden 1994 Depo. at 84, Gladden 1998 Depo. at 13)  As part of this initial evaluation, Gladden interviewed White and spoke with members of the police department and the District Attorney's Office.  (Gladden 1994 Depo. at 87, 106-111, Gladden 1998 Depo. at 14-15)  He additionally conducted some research

---

[2]The opinion of the Court of Criminal Appeals is located at exhibit R. 65 attached to the respondent's responsive "checklist" located at document 15.  It will hereinafter be referenced as "Opinion."

regarding the burglary aspect of the indictment in an effort to determine "whether or not a person could burglarize his marital residence." (Gladden 1994 Depo. at 107, Gladden 1998 Depo. at 14)  During his 1994 deposition, Gladden generally recalled the results of his research as follows:

> I reached the preliminary conclusion that we did not have any law on the subject - case law in the State of Alabama.  I only found, at that time, if I recall correctly, two states that did; one being North or South Carolina [actually it was Illinois] and one being Florida, one holding one way and one holding the other as to whether or not a husband could burglarize his marital residence.

(Gladden 1994 Depo. at 107)

Gladden's determination that the issue was unsettled in Alabama was correct.  However, either his actual finding or his 1994 recollection of how other jurisdictions had resolved the issue was incorrect.  As set forth in the Court of Criminal Appeals opinion, which affirmed White's conviction, more than two jurisdictions had addressed the general issue at the time of White's trial.  *White v. State*, 587 So. 2d 1218, 1222-1227 (Ala. Crim. App. 1990), *aff'd*, 587 So. 2d 1236 (Ala. 1991), *cert. denied*, 502 U.S. 1076 (1992).  Additionally, while an appellate court of Florida had at one time held that a husband could not, as a matter of law, burglarize his wife's residence, that decision had been overruled at the time of White's trial.  *See Cladd v. State*, 398 So. 2d 442, 443 (Fla. 1981) (husband who had been separated from wife for six months with no formal separation agreement or restraining order had no ownership or possessory interest in wife's apartment and could be charged with burglary, overruling *Vazquez v. State*, 350 So. 2d 1094 (Fla. App. 1977), which held that the husband had a legal right to be with his wife on the premises occupied by her at the time of entry).  Most importantly, however, it is clear that Gladden was correct in his finding that the question was unsettled in Alabama.  Indeed, when White's conviction for burglary/murder was appealed, the Court of Criminal Appeals addressed the issue extensively after labeling it "one of first impression in Alabama."  *White v. State*, 587 So. 2d 1218, 1222-1227 (Ala. Crim. App. 1990).

Following his initial evaluation, Gladden informed White and White's family that there was no binding authority regarding the burglary issue, gave them his opinion about the case and was retained.  (Gladden 1994 Depo. at 112)  Because there was no law on the subject in Alabama, Gladden stated that he discussed the issue with other members of the bar, including other criminal defense attorneys.  (Gladden 1994 Depo. at 108-111, Gladden 1998 Depo. at 15-16)  As a result of his research and discussions, Gladden stated that he reached a conclusion that "we had about a 50/50 shot at . . .  convincing a trier of fact or

convincing the judge as a matter of law" that White could not be convicted of burglarizing his marital residence.  (Gladden 1994 Depo. at 110, Gladden 1998 Depo. at 16)  When asked if he arrived at the 50/50 determination based upon a perceived split in other jurisdictions, Gladden responded negatively and specifically related the following:

> Q:  Tell me, please, how you arrived at that number in that conclusion?
>
> A:  A coin has two sides, and that's how I arrived at that conclusion.  He's got to say yes or no, and there's law supporting both ways.

(Gladden 1994 Depo. at 208)

It is also important to note that Gladden's strategy encompassed both "convincing a trier of fact or convincing the judge as a matter of law."  (Gladden 1994 Depo. at 110, 154)  Even if he failed to convince the judge that, as a matter of law, White was incapable of burglarizing his marital residence, it would not have necessarily followed that a jury could not acquit White of burglary under the facts of this case.  "Under Alabama law, a person who is licensed or privileged to enter premises cannot commit criminal trespass or burglary."  *White v. State*, 587 So. 2d 1218, 1223 (Ala. Crim. App. 1990), *aff'd*, 587 So. 2d 1236 (Ala. 1991), *cert. denied*, 502 U.S. 1076 (1992), *citing, Johnson v. State*, 473 So. 2d 607, 609 (Ala. Crim. App. 1985).  Gladden's defense was that White could not commit burglary because he was privileged to enter the premises.  In other words, if White was not privileged as a matter of law based upon his marriage to the victim, the strategy still could have succeeded in that White's jury could have found a privilege to exist in this case.

As noted above, Gladden stated that this was part of his defense strategy and the record reveals that he presented evidence to support his argument.  For example, Gladden testified that he had obtained information that both White and the victim had each moved in and out of the marital residence on previous occasions.  (Gladden 1994 Depo. at 24)  Gladden argued and presented evidence in support of this point at trial.  (R. 102, 129, 182, 217, 441)[3]  Additionally, Gladden obtained and presented evidence

---

[3]References in this quote as "R. ___" are to the trial transcript located at document 15, volumes 15-17 in the record.

that there had been no legal dissolution of the marriage and that there was absolutely no order, court or otherwise, preventing or restraining White from entering the marital residence.  (R. 100, 107, 131, 397)  He also established and argued the fact that Mickey Brantley, the chief investigating officer, did not even charge White with burglary despite the fact that Brantley investigated the scene and was familiar with the evidence.  (R. 435)  This Court finds that Gladden's attempt to convince the jury that White was not guilty of burglary, regardless of whether or not an absolute privilege was found, was not "outside the wide range of reasonable professional assistance."

C.R. 1722-1725

The Court finds that Gladden's focus on the burglary issue in defense of White was the result of reasonable and strategic decisions and did not constitute ineffective assistance of counsel. The issue of whether or not an individual could burglarize his or her marital residence was unsettled in Alabama at the time of White's trial.  Again, when reviewing the issue pursuant to an appeal of White's conviction, the Court of Criminal Appeals expressly stated that the "issue of whether one spouse may burglarize the residence of the estranged spouse is one of first impression in Alabama."  *White v. State*, 587 So. 2d 1218, 1222-1227 (Ala. Crim. App. 1990), *aff'd*, 587 So. 2d 1236 (Ala. 1991), *cert. denied*, 502 U.S. 1076 (1992).  This Court will not base an ineffective assistance claim on case law that is unsettled at the time of counsel's actions.  Such a finding would require the kind of hindsight examination of effectiveness the Supreme Court expressly disallowed in *Strickland*.

Finally, the Alabama Court of Criminal Appeals has essentially already addressed the question of whether Gladden's focus on the burglary defense constituted ineffective assistance of counsel.  That Court "carefully examined the record with regard to trial counsel's performance."  *White v. State*, 587 So. 2d 1218, 1235 (Ala. Crim. App. 1990).  Obviously the record reflects Gladden's efforts to convince the judge and/or the jury that White did not commit burglary because the dwelling involved was his marital residence.  Additionally, as noted above, the substantive issue of the defense was addressed extensively by the Court of Criminal Appeals.  *Id.*, at 1222-1227.  Presumably if the defense proffered by Gladden was frivolous and had "no chance of

9

success," the Court of [Criminal] Appeals would not have held as follows:  "A strong indication of trial counsel's proficiency is that fact that the jury, despite the defendant's two damning and incontrovertible confessions, recommended a sentence of life without parole.  We find no merit to the defendant's contention that he was denied the effective assistance of counsel."  *Id.* at 1235.

[C.]R. 1729-1730

The record shows that the only offer made by the State was one of life without parole in exchange for a plea of guilty to capital murder.  Gladden testified that, "on more than one occasion," he attempted to obtain a plea offer for non-capital murder or manslaughter, but was unsuccessful.  (Gladden 1998 Depo. at p. 92-93)  Regarding the State's offer, Gladden testified that he relayed the offer to White as follows:

I told him what the offer was.  I told him it was entirely up to him whether - It was his decision whether to take it or not.  He asked me what my opinion was.  I tried to give him, the best I could, the feel I had of what we could do and not do with the case.

I know I told him that it was my opinion that the least he would come out with would be a murder conviction and the most that he would be the death penalty and this was halfway in between that.  I told him, the best I recall, he'd have no more than a 50/50 chance of not being convicted of the capital murder, and that if he was convicted of capital murder, that I felt like based on Judge Banks' record that he would sentence him to death and he made the decision not to take it.

(Gladden 1994 Depo. at 199-200)

When asked if he affirmatively recommended to White a rejection of the plea offer, Gladden stated unequivocally that he would never affirmatively recommend that "someone not accept an offer that will definitely keep them from being executed."

(Gladden 1994 Depo. at 204)

White's claim of ineffective assistance of counsel in terms of the plea offer, is based on his contention that "a conviction and the imposition of a death sentence was virtually assured if the 'no burglary' defense was the principal defense presented at trial."

10

(Amendment to Petition for Relief at 2)  Additionally, White's affidavit contains numerous statements relaying that the only reason that he rejected the offer was because he believed that avoidance of a capital murder conviction "was <u>possible</u> under my lawyer's legal theory."  (White's affidavit at 6) (emphasis added) The affidavit additionally sets forth the following:

> 21.  I now understand that no jurisdiction had accepted Gladden's legal theory prior to my trial.  Moreover, I now understand that longstanding precedent in Alabama indicated that the theory would not be accepted in Alabama.  Indeed, I now understand that the only decision that supported Gladden's theory - a decision by a Florida appellate court - had been criticized and had been expressly overruled by the Florida Supreme Court long before I was charged with any crime.  As a result, I now understand that I did not have a "50-50" chance of winning on Gladden's legal theory.  Instead, <u>it was almost certain that I would lose</u>.

> 22.  I relied exclusively on my lawyer's advice about his "no burglary" legal theory in making my decision on the first day of trial to not accept the plea bargain.  Had I known that I had <u>no legitimate chance</u> of defeating the capital murder charge on this legal theory, I would have accepted the plea bargain because I would have avoided the death penalty and would have been assured the chance to see my daughter grow up.  This was what I wanted before trial and I was willing to plead guilty to a murder charge to obtain this.  I only rejected the plea bargain because my attorney had advised me that his legal theory could defeat the capital murder charge.

(White's Affidavit at p. 7) (emphasis added)

The Court disagrees with White's assertion that the "burglary" defense had no legal merit.  Furthermore, such a finding would violate the Supreme Court's directive that "every effort be made to eliminate the distorting effects of hindsight," when reviewing claims of ineffective assistance of counsel.

The Court notes that to any extent Gladden advised White that, under Florida law, a husband could never be convicted of burglarizing his wife's residence, his advice was erroneous.  While an appellate court of Florida had at one time held that a husband could not, as a matter of law, burglarize his wife's residence, that decision had been overruled at the time of White's trial.  *See Cladd v. State*, 398 So. 2d 442, 443 (Fla. 1981) (husband who had been separated from wife for six months with no formal separation agreement or restraining order had no ownership or possessory interest in wife's apartment and could be charged with burglary, overruling *Vazquez v. State*, 350 So. 2d 1094 (Fla. App. 1977), *cert. denied*, 360 So. 2d 1250 (Fla. 1978) (the husband had a legal right to be with his wife on the premises occupied by her at the time of entry).  It does not follow from this, however, that the "defense had no legal basis in Alabama" and that a conviction was "virtually assured" if it were pursued.

The *Cladd* opinion itself demonstrates that viability of the issue and the fact that it was one upon which reasonable legal minds could differ.  The decision overruled *Vasquez*, only to the extent that, in *Vasquez*, the court held that "the marriage relationship and the right of consortium deriving therefrom preclude the State from ever establishing the nonconsensual entry requisite to the crime of burglary."  *Cladd v. State*, 398 So. 2d 442, 444 (Fla. 1981). . . .  Additionally, the *Cladd* decision was not unanimous.  In fact, three of seven Justices on the Florida Supreme Court, including the Chief Justice, dissented in favor of the *Vasquez* result.  *Cladd v. State*, 398 So. 2d 442, 444-446 (Fla. 1981).  The decision was restricted to "the particular facts of this case" and merely held that under those specific facts, "the defendant <u>could</u> be guilty."  *Id*. at 443 (emphasis added).  The opinion contains two strongly worded dissenting opinions.  *Id*.  Gladden's "burglary defense" had come up one vote short of being affirmed as the general law of the State of Florida.

In its review of White's case, the Court of Criminal Appeals, extensively discussed the issue in question, after designating it "one of first impression" in Alabama.  *White v. State*, 587 So. 2d 1218, 1222-1227 (Ala. Crim. App. 1990), *aff'd*, 587 So. 2d 1236 (Ala. 1991), *cert. denied*, 502 U.S. 1076 (1992).  In setting forth the following, the Court noted that the issue was not one-sided:

> "Some authorities broadly state that a man cannot burglarize his wife's home, and it is considered that the burglary statute is not designed to protect against entries by persons occupying a marital or immediate familial relationship with the legal possessor of property.  So, it is held that in absence of a legal separation agreement, or restraining order, or court decree limiting or ending the consortium rights of the parties, each spouse has a legal right to be with the other spouse on premises possessed by

either or both spouses so long as the marriage exists, and entry
onto such premises by either spouse cannot be a burglary, although
a court order will negate any rights to enter the premises."
(Footnotes omitted.)

While "the offense [of burglary] is not committed by one
who breaks and enters his own dwelling or other building," *Stanley
v. State*, 57 Ala. App. 83, 84, 326 So. 2d 148, 149 (1976); *Wilson
v. State*, 247 Ala. 84, 85, 22 So. 2d 601, 602 (1945), "[i]t has,
however, also been held that the mere existence of the marriage
relationship does not preclude the one spouse from committing
burglary against the other spouse."  12A C.J.S. *Burglary* § 38
(1990 Supp.) (footnote omitted).

*Id*. at 1224.

The Court finds that the issue was unsettled in Alabama and that there was
law supporting both sides of the question.  Again, basing an ineffective assistance
claim on case law that is unsettled would be to engage in the kind of hindsight
examination of effectiveness prohibited by the Supreme Court in *Strickland*.
Additionally, focusing solely on the issue as a matter of law ignores Gladden's
efforts to convince the jury that White did not commit burglary under the facts of
this case.

There was no advice to reject the offer.  Gladden stated plainly that he
would offer no such advice when the plea was one that would keep his client from
being executed.  He informed White that, at best, the chance of prevailing was a
toss-up and affirmatively informed White that, if they lost the issue, Judge Banks
"would sentence him to death."  White made the decision to reject the offer and
admits in his affidavit that Gladden fully informed him of the offer and told him
his chance of prevailing was no better than tossing a coin.  (White Affidavit at p.
6)  The Court finds that Gladden's conduct in reference to the plea bargain does
not rise the level required for a finding of deficient performance.  To advise White
that he had a chance of prevailing on the burglary issue was not outside the "wide
range of reasonably profession [sic] assistance."

Alternatively, White has failed to prove that had Gladden advised him
differently, he would have accepted the offer.  He contends that if Gladden had
informed him that he had absolutely "no legitimate chance" at acquittal, he would
have accepted the offer.  The Court does not doubt White's assertion in that
regard.  Unless an individual wanted the death penalty, almost anyone would
presumably accept the offer if told that a conviction and death sentence were
"virtually assured" if they proceeded to trial.  As noted above, however, the Court

13

does not find that the defense [had "no legitimate chance." Even if Gladden's advice was based, in part, on an erroneous] assumption that *Vasquez* was good law in Florida, it does not follow that the defense had no chance of success. White did not reject the offer based upon the decision of a Florida court. He rejected the offer because he believed that avoidance of a capital murder conviction "was <u>possible</u> under my lawyer's legal theory." (White Affidavit at 6)

Finally, in support of his claim, White offers self-serving statements that he would have accepted the offer had he been properly advised. These statements are not enough. The only objective evidence White relies on to support his claim is willingness to accept a straight murder plea prior to trial. A murder plea, however, would have left White with a chance to get out of prison someday. Conversely, a guilty plea to capital murder would result in a sentence of life without parole and no hope of ever being set free. The objective evidence shows that White was willing to take his chances in an effort to, as is set forth in his affidavit, avoid a capital murder conviction. (White Affidavit at 6) The Court finds that White has failed to prove prejudice related to this claim, therefore, it is denied.

C.R. 1748-1754

*White v. State*, CR-98-0722, slip op. at 6-12 (quoting *White v. State*, CC89-0011.60EDF (Circuit Court's Findings of Fact, Conclusions of Law, and Order)).[4] The Court of Criminal Appeals then rejected White's claims of error as follows:

White contends that the circuit court erred by examining the quality of trial counsel's representation in hindsight and determining that "reasonable minds could differ" about the adequacy of the theory of defense he proposed to White. According to White, the findings of the circuit court are misplaced because trial counsel never "informed himself fully" on the law that rejected his theory of defense and counsel never determined whether "reasonable minds" could differ on the issue. White asserts that reasonable minds could not differ about the holding in *Cladd* or the fact that *Cladd's* dissenting opinions did not represent the view of the majority of the Florida Supreme Court.

First, Gladden never advised White to reject the State's plea offer. Gladden testified that he would never advise a client to reject a plea that ruled out the death penalty as a possible sentence. What Gladden told White was that Alabama Courts had never decided the issue presented in his case, thus there was

---

[4]The Circuit Court's findings and conclusions are located at exhibit R-58 in volume 14 of document 15.

a 50/50 chance that Alabama Courts would rule in his favor.  As discussed above, this was a true assertion.  Thus, counsel was not ineffective in this regard. Second, at the time of White's trial, trial counsel's decision to pursue a "no burglary" defense was not "outside the wide range of professionally competent assistance."  *Strickland v. Washington*, 466 U.S. 668, 690 (1984).  Alabama had not decided whether a spouse could burglarize the marital residence at the time the plea was offered.  Judge Bowen, writing for this court on direct appeal, stated that "whether one spouse may burglarize the residence of the estranged spouse is one of first impression in Alabama."  *White*, 587 So. 2d at 1222.  As the Circuit Court noted in it's [sic] order, this Court on direct appeal acknowledged that:

> "Some authorities broadly state that a man cannot burglarize his wife's home, and it is considered that the burglary statute is not designed to protect against entries by persons occupying a marital or immediate familial relationship with the legal possessor of property.  So, it is held that in the absence of a legal separation agreement, or restraining order, or court decree limiting or ending the consortium rights of the parties, each spouse has a legal right to be with the other spouse on premises possessed by either or both spouses so long as the marriage exists, and entry onto such premises by either spouse cannot be a burglary, although a court order will negate any rights to enter the premises.' (Footnotes omitted.)"

*White*, 587 So. 2d at 1224, (citing 12A C.J.S. *Burglary* § 38 at 230 (1980)).

That Gladden was wrong about the majority holding in *Cladd* did not prevent White from intelligently evaluating the State's plea offer because, at the time the plea was offered, there was at least one jurisdiction that sided with Gladden's defense theory.  *State v. Weitzel*, 112 Ohio App. 300, 168 N.E.2d 550 (Ohio App. 1 Dist. 1960), held that a man could not burglarize his wife's home. Thus, there was case law to support Gladden's theory of defense.  Additionally, the majority decision in *Cladd* was achieved by a vote of 4 to 3.  Thus, it was not unreasonable for counsel to proffer a "no burglary" defense because the possibility existed that Alabama would find as a matter of law that a spouse could not be guilty of burglarizing the marital residence.  "For counsel's advise to rise to the level of constitutional ineffectiveness, the decision . . . must have been 'completely unreasonable, not merely wrong, so that it bears no relationship to a possible defense strategy.'"  *Hatch v. State*, 58 F.3d 1447, 1459 (10th Cir. 1995).

We agree with the circuit court's finding that Gladden was not ineffective during the plea negotiations.  For the reasons stated in the circuit court's order we find that trial counsel was not deficient in this regard, nor did White suffer

prejudice due to Gladden's misplaced reliance on *Cladd*.

  . . . .

  White contends that even in hindsight, reasonable minds in Alabama could not differ about the viability of trial counsel's legal theory.  White argues that the opinions asserted in the *Cladd* dissents had been rejected in Alabama law and reasonable minds could not differ on the applicability of these concepts in Alabama.  According to White, Alabama had long recognized a woman's right to eject her husband from property titled in her name.  *Cook v. Cook*, 125 Ala. 583, 584-85, 27 So. 918 (1900).  Additionally, the Alabama Constitution of 1901, Art. X, § 209, and Married Women's Act, Title 34, §§ 65-80 Ala. Code, provides for a woman's independent property rights notwithstanding marriage.  Also, *Johnson v. Johnson*, 201 Ala. 41, 77 So. 2d 335 (1917), allowed a woman to sue her husband for the tort of trespass.

  Thus, according to White, because burglary is a crime against possession, the only available defenses to the burglary charge was that:  1) the defendant had a license or privilege to enter the premises; or, 2) the defendant had permission to enter the house.  These defenses were presented.  However, White claims that trial counsel could not have convinced the jury as a factual matter that White did not commit a burglary and that counsel presented no evidence at trial demonstrating that White had any ongoing right to enter the house.

  For the reasons already discussed, it was not unreasonable for trial counsel to attempt to argue that as a matter of law White could not commit a burglary due to his marriage to the victim.  Also, the record supports the circuit court's finding that in the alternative, the defense presented evidence attempting to show that as a factual matter White had always, even during acrimonious times and other separations during the marriage, been allowed to enter the marriage residence at his will.

  For the reasons stated in the circuit court's order, quoted [above], we find that at the time of the trial, reasonable minds in Alabama could differ about the viability of trial counsel's "no burglary" theory of defense and that trial counsel was not deficient in this regard, nor did White suffer prejudice due to Gladden's pursuit of this theory of defense.

*White v. State*, CR-98-0722, slip op. at 12-13.  After the affirmance of the denial of his Rule 32

motion, White petitioned the Alabama Supreme Court for review.  His petition was denied.  *Ex*

*parte White*, 792 So. 2d 1097 (Ala. 2001).

White has filed a timely petition to this court pursuant to 28 U.S.C. § 2254.  His final amended petition contains eleven separate claims.  On the motion and consent of the parties, the case has been bifurcated, placing only one issue before this court at present.  (Doc. 13).  As previously stated, that sole issue is whether the Alabama Court of Criminal Appeals unreasonably applied *Strickland* to the facts of White's Rule 32 petition as it concerns the decision whether to plead or go to trial.  The petitioner frames the relevant issue as follows:

> Whether White was denied the effective assistance of counsel during this consideration of a life-saving plea offer by the State of Alabama where his counsel failed to research applicable Alabama law and misrepresented the dissenting opinion of an applicable Florida Supreme Court case as the majority holding?

(Pet. Brief at 1).[5]

## II.  PROCEDURAL DEFAULT

The respondents initially assert that because certain of the petitioner's legal and factual allegations in the petition were not properly raised in the state courts, they are barred from review.  In support of this claim, the respondents detail twenty-one "averments" that were not presented in the state court proceedings.  (Answer at 6-8).[6]  The petitioner's counsel counters that this is "a cynical attempt to defeat White's meritorious claim and send him to his death on technicalities."  (Pet. Brief at 38).

### A.  The Law

Before addressing the merits of the petitioner's allegations, the court must address whether his claims are procedurally barred.  A federal court's authority to review state court

---

[5]The petitioner's brief is located at document 21.  It will be referenced herein as "Pet. Brief."

[6]The "Answer" is located at document 14.  The respondents have also submitted a brief in support of their answer. (Doc. 16).  It will be referenced herein as "Res. Brief."

criminal convictions is severely restricted when a petitioner has failed to present the claim in

state court or when he fails to follow the applicable state procedural rules. *Teague v. Lane*, 489

U.S. 288, 297-98 (1989); *Johnson v. Singletary*, 928 F.2d 1166, 1173 (11th Cir. 1991), *cert.*

*denied*, 506 U.S. 930 (1992).  Where the petitioner fails to present the claim in state court, he is

barred from raising it in federal court unless he can show cause for the default and prejudice

resulting therefrom.  *Teague*, 489 U.S. at 298.  Where the claim is presented in state court and

the last state court to review it states "clearly and expressly" that its judgment rests on a

procedural bar, and the bar presents an independent and adequate state ground for denying relief,

federal courts may not review the claim.  *Harris v. Reed*, 489 U.S. 255, 263 (1989); *Baldwin v.*

*Johnson*, 152 F.3d 1304, 1314 (11th Cir. 1998), *cert. denied*, 526 U.S. 1047 (1999); *Hill v.*

*Jones*, 81 F.3d 1015, 1022 (11th Cir. 1996), *cert. denied*, 519 U.S. 1119 (1997).

In *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999), the Supreme Court stated that federal

habeas corpus petitioners need only provide the "state courts a *fair* opportunity to act on their

claims."  *Id*. at 844 (italics in original).  The Court further held that to satisfy the exhaustion

requirement for bringing a habeas corpus petition, the petitioner was required to present his

claims to the state supreme court for discretionary review when that review is part of the ordinary

review procedure in the State.  *Id*. at 848.  *See also*, 28 U.S.C. § 2254(b)(1) - (2) ("An application

for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State

court shall not be granted unless it appears that . . . the applicant has exhausted the remedies

available in the courts of the State" and "An application for a writ of habeas corpus may be

denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies

available in the courts of the State.") and § 2254(c) (no exhaustion if a petitioner "has the right

18

under the law of the State to raise, by available procedures, the question presented").

A petitioner may overcome a procedural default in one of two ways.  First, under the "cause and prejudice" exception, he can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law."  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  Second, under the "fundamental miscarriage of justice" exception, he "can demonstrate a sufficient probability that our failure to review his federal claim will result in a fundamental miscarriage of justice."  *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).  The latter exception allows a federal habeas court to consider a procedurally defaulted claim in the absence of cause if a "fundamental miscarriage of justice" has "probably resulted in the conviction of one who is actually innocent."  The petitioner must show by clear and convincing evidence that but for a constitutional error, no reasonable juror would have found the petitioner eligible for the death penalty.  *Schlup v. Delo*, 513 U.S. 298, 323-27 (1995) (citing *Sawyer v. Whitley*, 505 U.S. 333, 335 (1992)); *Smith v. Murray*, 477 U.S. 527, 537-38 (1986) (quoting *Isaac v. Engle*, 456 U.S. 107, 135 (1982) and *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).

**B.  Discussion**

Upon a review of the record, the court determines that the petitioner afforded the state courts a *fair* opportunity to act on this claim as is required.  *See O'Sullivan*, 526 U.S. at 844.  Thus, the first claim -- whether White lacked effective assistance of counsel -- which is presently before the court, is not procedurally defaulted from review.  The underlying tenants and factual averments of this claim were properly presented to the state courts already.  Although the respondents have carefully parsed the petitioner's allegations to demonstrate that certain legal and factual averments were not presented in the state courts (Answer at 6-8), this court finds the

distinctions drawn are not sufficient to warrant a contrary conclusion as to this claim.  This

conclusion is particularly true as the facts provide the necessary context for evaluating the merits

of the present claim.

## III.  HABEAS CORPUS REVIEW

### A.  The Statutory Standard of Review

The posture of this first claim requires this court to consider whether the state court's

treatment of the facts and/or law was in some way unreasonable.  The language of § 2254 is

controlling:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State Court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim:
>
> > (1) resulted in a decision that was contrary to, or involved
> > an unreasonable application of, clearly established Federal law, as
> > determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable
> > determination of the facts in light of the evidence presented in the
> > State court proceeding.

28 U.S.C. § 2254(d).  The Supreme Court has identified two ways that a state court's application

of federal law may be unreasonable:

> First, a state-court decision involves an unreasonable application of this
> Court's precedent if the state court identifies the correct governing legal rule from
> this Court's cases but unreasonably applies it to the facts of the particular state
> prisoner's case.  Second, a state-court decision also involves an unreasonable
> application of this court's precedent if the state court either unreasonably extends
> a legal principle from our precedent to a new context where it should not apply or
> unreasonably refuses to extend that principle to a new context where it should
> apply. . . .

*Williams v. Taylor*, 529 U.S. 362, 407, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).  "[A] federal

habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id*. at 409. "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413.

Thus, the inquiry under § 2254 in this case involves two questions: (1) did the state court identify the correct rule of law, in accordance with Supreme Court precedent? and (2) was the state court's application of that rule of law to the facts of this case reasonable? The standard of review under § 2254 is different than a *de novo* review. As stated by the Supreme Court, "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id*. at 410. "[A] federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411. Thus, an "incorrect" ruling must be allowed to stand if it may be said that the state court's analysis and determination was reasonable. *Id*. at 412. Additionally, "[a] state court's determination of the facts . . . is entitled to substantial deference." *Grossman v. McDonough*, 466 F.3d 1325, 1336 (11th Cir. 2006).

In *Woodford v. Visciotti*, the Supreme Court stated:

Under § 2254(d)'s "unreasonable application" clause, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied *Strickland* incorrectly. *See Bell v. Cone*, 535 U.S. 685, 698-699, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002); *Williams*, *supra*, [529 U.S.] at 411, 120 S. Ct. 1495. Rather, it is the habeas applicant's burden to show that the state court applied *Strickland* to the facts of his case in an objectively unreasonable manner. An "unreasonable

application of federal law is different from an incorrect application of federal law." *Williams*, *supra*, [529 U.S.] at 410, 120 S. Ct. 1495; *see Bell*, *supra*, [535 U.S.] at 694, 122 S. Ct. 1843. The Ninth Circuit did not observe this distinction, but ultimately substituted its own judgment for that of the state court, in contravention of 28 U.S.C. § 2254(d).

537 U.S. 19, 24-25, 123 S. Ct. 357, 360, 154 L. Ed. 2d 279 (2002). Similarly, the Eleventh

Circuit stated:

> Under the unreasonable application clause of section 2254(d), a federal habeas court may not issue the writ on the ground that, in its independent judgment, the state court applied federal law incorrectly. *See Bell v. Cone*, 535 U.S. 685, 698-99, 122 S. Ct. 1843, 1852, 152 L. Ed. 2d 914 (2002). This clause imposes a "'highly deferential standard for evaluating state-court rulings,' which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24, 123 S. Ct. 357, 360, 154 L. Ed. 2d 279 (2002) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n. 7, 117 S. Ct. 2059, 2066 n. 7, 138 L. Ed. 2d 481 (1997)). The habeas applicant must show that the state court applied federal law to the facts of his case in an objectively unreasonable manner. *See id.* at 25, 123 S. Ct. at 360. An "unreasonable application of federal law is different from an incorrect application of federal law." *Williams*, 529 U.S. at 410, 120 S. Ct. at 1522. Even clear error, standing alone, is not a ground for awarding habeas relief. *See Locker v. Andrade*, 538 U.S. 63, 75, 123 S. Ct. 1166, 1175, 155 L. Ed. 2d 144 (2003).

*Stephens v. Hall*, 407 F.3d 1195, 1202 (11th Cir. 2005). Thus, this court must determine whether

the Alabama courts made an objectively unreasonable application of federal law to the

petitioner's ineffective assistance of counsel argument.

### B.  Ineffective Assistance of Counsel Standard

The seminal case addressing ineffective assistance of counsel claims is *Strickland v.*

*Washington*, 466 U.S. 668 (1984). In *Strickland*, the Supreme Court announced the now

well-established "*Strickland* test" for determining ineffective assistance of counsel claims:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires

22

showing that counsel made errors so serious that counsel was not functioning as
the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the
defendant must show that the deficient performance prejudiced the defense.  This
requires showing that counsel's errors were so serious as to deprive the defendant
of a fair trial, a trial whose result is reliable.  Unless a defendant makes both
showings, it cannot be said that the conviction or death sentence resulted from a
breakdown in the adversary process that renders the result unreliable.

*Id*. at 687.

Without question, the Sixth Amendment right to effective assistance of counsel applies to

the plea bargaining phase of a criminal trial.  *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985) ("We

hold, therefore, that the two-part *Strickland v. Washington* test applies to challenges to guilty

pleas based on ineffective assistance of counsel.").  In any ineffective assistance claim, the

scrutiny of counsel's performance is, of necessity, highly deferential:

. . . .  A fair assessment of attorney performance requires that every effort
be made to eliminate the distorting effects of hindsight, to reconstruct the
circumstances of counsel's challenged conduct, and to evaluate the conduct from
counsel's perspective at the time.  Because of the difficulties inherent in making
the evaluation, a court must indulge a strong presumption that counsel's conduct
falls within the wide range of reasonable professional assistance; that is, the
defendant must overcome the presumption that, under the circumstances, the
challenged action "might be considered sound trial strategy."

*Srtickland*, 466 U.S. at 689.  In other words, "a court deciding an actual ineffectiveness claim

must judge the reasonableness of counsel's challenged conduct on the facts of the particular case,

viewed as of the time of counsel's conduct."  *Id*. at 690.  *Strickland* further recognized that

"strategic decisions" should be afforded an even higher level of deference.

. . . [S]trategic choices made after thorough investigation of law and facts
relevant to plausible options are virtually unchallengeable; and strategic choices
made after less than complete investigation are reasonable precisely to the extent
that reasonable professional judgments support the limitations on investigation.
In other words, counsel has a duty to make reasonable investigations or to make a
reasonable decision that makes particular investigations unnecessary.  In any

23

ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Id*. at 690-91.

Even if a petitioner can overcome these heavy presumptions, he must still show that he was prejudiced by the deficiency.  "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."  *Id*. at 691.  To satisfy *Strickland*'s second prong, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different."  *Id*. at 694.  In a plea bargaining situation like this one, where the challenge concerns allegedly deficient research and faulty advice regarding the options for trial, the "prejudice" determination will turn on whether the appropriate level of research would result in a different recommendation as to the plea, and whether the defendant's decision not to plead guilty would change in light of that advice.  *See Hill*, 474 U.S. at 59-60.

The petitioner correctly notes a circuit split on the issue of whether he must adduce objective evidence, *i.e.*, something beyond his own *post hoc* testimony, to carry his burden on the prejudice inquiry.  *See, e.g., Paters v. United States*, 159 F.3d 1043, 1047 (7th Cir. 1998) (objective evidence required); *United States v. Gordon*, 156 F.3d 376, 381 (2d Cir. 1998) (same); and *Magana v. Hofbauer*, 263 F.3d 542, 547 n.1 (6th Cir. 2001) (objective evidence not required).  While the Eleventh Circuit has not directly addressed this issue, this court finds persuasive its decision in *Diaz v. United States*, 930 F.2d 832 (11th Cir. 1991).  In that case, the court stated: "Given appellant's awareness of the plea offer, his after the fact testimony concerning his desire to plead, without more, is insufficient to establish that but for counsel's

24

alleged advice or inaction, he would have accepted the plea offer." *Id*. at 835.  Reading *Diaz* in conjunction with *Strickland*'s "requirement that the defendant affirmatively prove prejudice," and the fact that "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding," 466 U.S. at 693, the court presumes that in the Eleventh Circuit, the petitioner must present some objective evidence to establish prejudice.[7]

### C.  Discussion of the Merits

The initial question is whether the Alabama Court of Criminal Appeals unreasonably applied *Strickland* to the facts of this case.  This court will review the Court of Criminal Appeals' analysis of the two *Strickland* prongs individually.  In doing so, the court again notes that because *Strickland* is a conjunctive test, the reviewing court's application of each prong must have been unreasonable for the petitioner to succeed on this claim.

The petitioner assigns error on the first prong, dealing with the counsel's performance, in five separate ways.  Specifically, he asserts: (1) that the Court of Criminal Appeals unreasonably applied *Strickland* in holding "that, in hindsight, 'reasonable minds could differ' about this legal theory" (Pet. Brief at 14); (2) that the court "erroneously relied upon the fact [that] Alabama courts had not confronted this issue in the criminal law context and the fact that three justices of the Florida Supreme Court had dissented from the holding in *Cladd*" (*id*. at 16-20); (3) that "[t]rial counsel misrepresented the law to White" (*id*. at 21); (4) that the court "unreasonably concluded that trial counsel's use of the 'no burglary' legal theory was 'not unreasonable'" (*id*. at 24); and, (5) that the court based its decision on facts not cited at the original trial proceedings

---

[7]Even if the Eleventh Circuit were to conclude that no objective evidence was necessary, the result in this proceeding would still be the same.

25

(*id*. at 30).  This court will address each of these assertions in turn.

### 1.  Purported Hindsight Review and Erroneous Determination that Reasonable Minds Could Differ About the Law

First, the petitioner asserts that the state court "erred by examining counsel's advice in hindsight and holding that counsel's advice was reasonable despite his errors because 'reasonable legal minds' could differ about the law"[8] and that the court "unreasonably failed to consider that trial counsel's failure to conduct legal research is not immunized by recasting the selection of this legal theory as a 'strategic decision.'"  *Id*. at 14-16.  He concludes his argument stating that when counsel's advice is examined in the context of when it was given it shows that

> trial counsel was constitutionally ineffective because he misrepresented and failed to properly research and analyze the law that he relied upon.  Furthermore, trial counsel's erroneous advice cannot be justified in hindsight by examining if "reasonable minds could differ" over whether or not he had conducted thorough research.  At the time, reasonable minds could <u>not</u> differ about *Cladd's* devastating holding or the fact that the dissenting opinion did not represent the view of the majority of the Florida Supreme Court.

*Id*. at 16.

In contravention of this argument, the respondents assert that the applicability of this defense was unsettled at the time of the plea (Res. Brief at 47); counsel explored its applicability with other criminal defense counsel (*id*.); the issue was raised by new counsel on the petitioner's direct appeal (*id*. at 48); and, the issue was raised in various cases subsequent to the decision by the Alabama Court of Criminal Appeals (*id*. at 48-50)  Still further, the respondents assert that counsel raised this matter not only as a legal issue, but as a factual issue before the jury.  *Id*. at

---

[8]In support of this contention, the petitioner's counsel asserts that at the time trial counsel "conducted his research on this burglary theory, at least ten (10) jurisdictions had considered this issue and <u>all</u> had rejected it. . . .  Trial counsel not only ignored, but also failed to even find <u>any</u> of these cases."  *Id*. at 14 (underlining in original).

50-53. Specifically, they note that counsel asserted that the petitioner was "privileged" to enter the residence because of his marriage and the circumstances of the relationship between him and his wife. *Id*.

In rejecting the petitioner's first-prong argument, this court finds that the determination by the state court regarding the basic advice given by counsel was not unreasonable. Because the burglary issue was unsettled in Alabama at the time of the plea discussions, and given the fact that at least some jurisdictions that had decided the issue disagreed, this court finds that the conclusion of the state court that counsel's advice was not "outside the wide range of reasonably professional assistance" is reasonable. Support for the reasonableness of the state court's determination can be found in a number of places, including the existence of the Ohio case supporting Gladden's theory; the fact that the leading Florida case, *Cladd*, contained the strong dissents of three Justices of the Florida Supreme Court; and that *Cladd* itself purported to be limited to its facts – providing arguable force to *Vasquez*, which was initially relied upon by counsel. The Alabama Court of Criminal Appeals and the trial court both referenced these facts in their respective decisions.

This court also disagrees with the petitioner's assertion that the Court of Criminal Appeals improperly used hindsight in assessing the effectiveness of counsel. *Strickland* offers a petitioner relief only if "the advice was not within the range of competence demanded of attorneys in criminal cases." 466 U.S. at 688. In evaluating such a claim, a court must "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id*. at 690. The first prong of the test is only satisfied in a case like this one if, after thorough investigation and research, no

reasonable attorney would have given the same advice in the same situation.  This question is

what the Court of Criminal Appeals was examining when it asked whether reasonable minds

could differ over the state of the law in 1989.

*Strickland* does prohibit *post hoc* examination of later decisions or enactments.  By way

of example, it would be inappropriate to hold counsel ineffective simply because the Alabama

courts rejected his theory on direct appeal.  In this case, the Court of Criminal Appeals examined

the facts and law at the time of trial to determine whether reasonable legal minds could differ

about the viability of Gladden's advice and trial theory.  This approach was reasonable under

*Strickland*.

This court also disagrees with the petitioner's assertion that the Court of Criminal

Appeals improperly "recast" the selection of this legal theory as a "strategic decision."  That

court, as well as the Rule 32 court, extensively evaluated the petitioner's claims as presented.

In sum, the court finds that the decisions of the Alabama State Courts were reasonable.

### 2. The State Courts Purportedly Erred as a Matter of Law in Concluding that Trial Counsel Reasonably Relied on His Legal Research

The petitioner next asserts that the Alabama Court of Criminal Appeals erroneously relied

on the facts (1) that the Alabama courts had not confronted spousal property issue in the criminal

context, and (2) the dissenting opinions in the *Cladd* case.  (Pet. Brief at 16).  The respondents

disagree.

### a. Alabama Law

The petitioner initially asserts that Alabama law does not support the determination of the

Court of Criminal Appeals in this matter.  In support of this claim, he asserts that the court's

conclusion is unreasonable because Alabama law was unfavorable towards counsel's position at the time it was advanced.  Specifically, he argues that under Alabama law burglary is an offense against the possession and, in a marriage, the woman has a right to exclusive possession of realty titled in her name.  *Id*. at 17-20.[9]  In response, the respondents argue that even if Alabama law on burglary was settled at the time of the petitioner's trial, that did not necessarily preclude White from being acquitted under the facts of this case.  (Res. Brief at 50-51).  By way of example, the respondents cite to the fact that under Alabama law, "a person who is licensed or privileged to enter premises cannot commit criminal trespass or burglary."  *Id*. at 51 (quoting *White*, 587 So. 2d at 1223 (citing *Johnson v. State*, 473 So. 2d 607, 609 (Ala. Crim. App. 1985)).  They also argue that, in fact, evidence supported his argument as a matter of law for the court and as a matter of fact for the jury.  (*Id*. at 51-52).

Granted, at the time of the trial, Alabama law generally was not supportive of the petitioner's defense.  First, burglary is an offense against possession.  *See Nicholson v. State*, 366 So. 2d 1142, 1143 (Ala. Cr. App. 1979) ("Burglary is an offense against possession or occupancy of a building, and the test for determining ownership of premises for purpose of indictment is not title to the property broken and entered, but is occupancy or possession at the time the offense was committed, unless the occupant is a mere servant."); *Hamilton v. State*, 283 Ala. 540, 545, 219 So. 2d 369, 373-74 (Ala. 1969) (same); *Fuller*, 28 Ala. at 30, 177 So. at 354 (same).  Second, a woman retains the right of possession of property titled in her name even after marriage.  *Hawkins*, 14 So. at 279 (when a woman inherits land from her father and continues in

---

[9]In support of this position, the petitioner cites *Fuller v. State*, 28 Ala. App. 28, 177 So. 353 (1937) and *Hawkins v. Ross*, 100 Ala. 459, 14 So. 298 (1893), for the propositions that burglary is an offense against the possession and a woman retains possession of property titled in her name after marriage.  (Pet. Brief at 17).  The respondents do not challenge these statements of law.

possession of the same after marriage, her possession and title remain with her and go to establish her separate estate); *see also Cook v. Cook*, 125 Ala. 583, 27 So. 918 (Ala. 1900) (wife had the right to recover family property from her defendant husband following a separation). Third, the prosecution would only have to show that the petitioner was not licensed, privileged or given permission to justify entry into the residence.  *See* Ala. Code § 13A-7-1 & Commentary;[10] *see also Johnson v. State*, 473 So. 2d 607, 609 (Ala. Crim. App. 1985) ("a person who is licensed or privileged to enter [a] premises cannot commit criminal trespass or burglary").

While Alabama has long recognized burglary as an offense against the possession and has provided that women retain possession of their titled property after marriage, these principles did not foreclose the possibility of a favorable ruling for the petitioner.  That the Alabama courts later referenced these principles in deciding the issue on direct appeal is not dispositive of the ineffective assistance of counsel claim in this matter.

To establish a defense to the burglary, the petitioner's counsel would have to show that the petitioner was either privileged or licensed to enter the premise or that he had received permission to enter.  The petitioner now asserts that his counsel "had no evidence to present at this trial that demonstrated that White had any ongoing right to enter the house, and he, in fact, presented none."  (Pet. Brief at 18).

---

[10]The Alabama Code provides: "**ENTER OR REMAIN UNLAWFULLY**.  A person 'enters or remains unlawfully' in or upon premises when he is not licensed, invited or privileged to do so."  Ala. Code § 13A-7-1(4).  The commentary to that section further states:

Under § 13A-7-1(4), a person "enters or remains unlawfully" when he is not licensed or privileged to do so.  (For discussion of what constitutes license or privilege to enter or remain upon premises, see Restatement of the Law of Torts, Second, Chapter 8, Privileged Entries on Land.)  A person who is licensed or privileged to enter premises cannot, therefore, commit criminal trespass or burglary under the proposal.  Of course, a person who gains admittance through intimidation, deception, trick or artifice does not enter with "license or privilege."

Ala. Code § 13A-7-1 (Commentary).

The relevant trial testimony was as follows:

Q.    Now, you being a neighbor there you probably knew a little bit about what went on around in the neighborhood, didn't you?

A.    Yes.

Q.    Now, Leroy and Ruby had been having trouble with their marriage for awhile, hadn't they?

A.    Yes.

Q.    One would move in, one would move out, and then the other would move in and the other one would move out, and so forth; is that right?

A.    Yes.

Q.    And that had been going on for some period of time?

A.    Yes, but they always made up.

Q.    Always made up and always got back together?

A.    Yes.

(C.R. at 153-54).  Counsel also presented other evidence and argument that the marriage had not

been legally dissolved and that no court order prevented White from returning to the marital

residence.  (C.R. at 1873, 1880, 1903 & 2171).  The evidence refuting this theory included that the

petitioner was not occupying the premise at the relevant time; he had agreed that he would move

out of the house to avoid the issuance of a court order ejecting him; he had been out of the house,

living elsewhere, approximately three weeks; the locks on the doors had been changed; and, he

made entry through the use of force.

The record will not support a conclusion that the defense theory was premised on license

or permission.  To the contrary, as seen below, defense counsel disavowed such theories in his

31

closing arguments.  Counsel premised his defense on a claim of privilege due to the petitioner's

marriage to Mrs. White.  As noted by the petitioner's trial counsel in closing argument:

> Leroy White did have a privilege by virtue of his marriage to enter that
> house.  Now, what happened?  Think about it.  Think about what Kenan
> Timberlake told you about what had happened 30 days or so before that occurred.
> Leroy White was in that house.  Ruby White was not.  Other witnesses have told
> you that this is something that had been going on off and on.  One would move in
> and one would move out, one would move back in, and so on.  Leroy White had a
> privilege to be there, as did Ruby.  Why, then, was it necessary to file a divorce
> action and ask a court in a divorce case to come in and put someone out of the
> house if they did not have that privilege.  If they did not have that privilege why,
> then, do you have to go to court and get a court order.  The privilege is there.  The
> privilege to kill someone is not there, the privilege to enter the house is.  The
> privilege to go in there after someone that doesn't even have a privilege has locked
> you out, I think is equally important.  I am not going to argue that there was a
> license or that there was an invitation.  By virtue of the marriage that was the
> marital residence, even though Leroy had taken up a temporary residence prior to
> that.  She had a temporary residence for a while.  She moved back in.  He had a
> temporary residence for awhile.  I don't think anything but a judge's order can
> terminate that privilege in the marital residence.
>
> You can terminate that privilege.  According to [the prosecutor], you folks,
> when you get off this long, hard jury duty, listening to us all day and being locked
> up at night, when you go home and stick the key in the door, if the key don't [sic]
> fit anymore then you are out, according to [the prosecutor].  Now, what does that
> tell you?  Do we have a land of laws, or is the spouse the law when you are gone
> from the house?  Can that spouse terminate your right just because he or she wants
> to.  I don't think so.
>
> Ownership is not the argument here.  It's admitted that the ownership is, the
> legal title is, in Ruby White or Ruby Smith, Ruby Garner Smith, or whatever the
> deed says.  But the marriage and that unity, until it is dissolved by a court of law,
> will give that privilege, that privilege to enter that residence, until such time as a
> judge says otherwise.

(C.R. at 2217-19).  In describing the unlawful entry element of burglary during the jury

instructions, the trial court stated:

> . . . .  What does that mean?  The Criminal Code defines that.  In the
> burglary section it says to enter or remain unlawfully.  A person enters or remains

32

unlawfully in or upon premises when he is not licensed, invited or privileged to do so.  When he is not licensed, invited or privileged to do so.  To be licensed to enter premises means that you have permission.  In the ordinary sense I think we are talking about passive permission, like the postman has permission to come up and deliver your mail on your property.  He's licensed.  He has your permission to do that.  Of course, invited means that you were requested or solicited to come upon the property.  Privilege means a particular and peculiar benefit or advantage enjoyed by a person or a class of persons.  It is a right or a power or a franchise held by a person or a class of persons.  So we are talking about licensed, invited or privileged.  That's what the code section says.

The legislative intent in passing the burglary statutes is stated in the act and in the Legislative Digest as being for the protection of persons and property.  The burglary statute's purpose is to protect persons and property, life and property.  But, basically, burglary is an offense against the possession of property.  Historically I think it has been considered that way.  That's why we have in the definition of burglary this element of entering or remaining unlawfully on somebody else's premises or dwelling.  It's basically and historically been considered an offense against the possession of premises or property or land.  Now, in this case the State has alleged and must therefore prove that this defendant unlawfully entered or unlawfully remained in the dwelling of Ruby White.  A dwelling is defined in the Criminal Code as a building which is used or normally used by a person for sleeping, living, or lodging.  There is not anything unusual about that.  It's what you would consider to be a dwelling using your common sense.

So then the State has to convince each of you beyond a reasonable doubt that this defendant was not licensed, invited, or privileged to enter the dwelling of Ruby White.  You, the jury, must therefore examine the facts of this case, the evidence that has been presented to you, and determine whether or not this defendant was licensed, invited, or privileged to enter the dwelling of Ruby White.  Now, ordinarily the owner or the person who is legally in possession of land or premises has a legally protected interest in the exclusiveness of possession, that is, they have the right to expect their possession to be exclusive.  They have the right to control who comes upon their premises.  In general, no one has the right to enter upon premises of another without the consent of the person in possession, and intruders who come upon the land of others without permission, or without a license or a privilege or without being invited, do so unlawfully.  So, having that in mind we understand that a license or a privilege to enter land may be granted to another person, the owner or the person who is legally in possession of land may grant the right to another person to come upon the land.  This grant of a privilege or a license or an invitation can be conditional or it can be unconditional.  You can grant a person a right to come upon your land for a specific purpose, or for any

33

purpose.  Since this is a right that can be granted by the owner or person legally in possession of land, it is also a right that can be terminated by the person who is the owner or legally in possession of property.  However, once you have granted a license or a privilege to enter to another person, in order to effectively terminate that right the fact of termination must be communicated to the other person.  The right to enter may be terminated by express revocation of consent communicated to the other person, or by acts which restrict or revoke the consent, and of which the other person knows.  So you can do it by words of revocation or by acts of revocation.

What then are the rights that are granted to married people by the marriage relationship[?]  What rights are granted to people by that relationship[?]  Under Alabama law the marriage relationship creates in each spouse the right to what we call consortium, and this is defined as the right of a spouse to the company, fellowship, the cooperation and assistance in the marital relationship as a partner in the family unit.  It's the right that each spouse has to the company, fellowship, cooperation and assistance in the marital relationship as a partner in the family unit.  That's called the right of consortium.  However, this right of consortium is not an absolute nor an unqualified right.  It does not, for example, confer on one spouse the right to commit a criminal offense against the other spouse, and it does not immunize spouses from criminal charges.

Now, in this case the State, as I understand it, is contending that these parties were living separate and apart, that they had separated and were living separate and apart and had separate dwellings.  That's for you to decide.  I make no decision on that.  I am simply trying to explain the law to you.  That's for you to decide whether that's a true fact or not.

It is also the State's contention that this defendant had no right, no license or privilege under the facts of this case to enter what they say is the dwelling of Ruby White without or her consent, or that if he had rights they were terminated.

Ladies and gentlemen, I am going to instruct you that where the husband and wife have in fact separated, if they have, and that's for you to decide, and where they are living separate and apart, each having their own separate dwelling, and the parties have communicated that fact to each other, then one spouse would have no right to enter the other's separate dwelling without consent solely because they were married, solely because of this marital relationship or this right of consortium.  That alone would not authorize such conduct.  Stated another way, when the husband and wife have separated and have established separate dwellings, neither the marital relationship nor the right of consortium would, standing alone, authorize the non-consentual entry by one spouse into the other's separate dwelling.  Of course, that's for you to decide.  The law of this state does

not prohibit a finding by a jury that one spouse unlawfully entered the separate dwelling of another spouse when they are in fact separated and living separate and apart.  But that's for you to decide, based on what you have heard in this case, the facts of this case.  You are the triers of the facts.  It will be for you to decide whether or not the State has met its burden of proving beyond a reasonable doubt that this defendant unlawfully entered the dwelling of Ruby White.  That's what they have charged in the indictment and that's what they have to prove.  If they haven't proved that, then they can't prove a burglary, and you wouldn't have to consider the capital offense any further.

> If they have proved that to you beyond a reasonable doubt, then you have to consider the second element of the burglary offense, . . . .

(C.R. 2240-48).

Although Alabama case law generally was not supportive of counsel's position, this court cannot find that it was unreasonable for the Court of Criminal Appeals to conclude that counsel's advice was reasonable.  The Court of Criminal Appeals was not labeling the advice as "good" or "strong," or even suggesting that it was better than other available defenses.  The holding merely acknowledges that counsel's advice and trial theory was one of myriad approaches that could have legitimately been employed by a reasonable lawyer acting in the petitioner's defense.  The court stated:

> In its review of White's case, the Court of Criminal Appeals [on direct appeal], extensively discussed the issue in question, after designating it "one of first impression" in Alabama.  *White v. State*, 587 So. 2d 1218, 1222-27 (Ala. Crim. App. 1990), *aff'd*, 587 So. 2d 1236 (Ala. 1991), *cert. denied*, 502 U.S. 1076 (1992).  In setting forth the following, the Court noted that the issue was not one-sided:

>> "Some authorities broadly state that a man cannot burglarize his wife's home, and it is considered that the burglary statute is not designed to protect against entries by persons occupying a marital or immediate familial relationship with the legal possessor of property. So, it is held that in absence of a legal separation agreement, or restraining order, or court decree limiting or ending the consortium rights of the parties, each spouse has a legal right to be with the

35

other spouse on premises possessed by either or both spouses so long as the marriage exists, and entry onto such premises by either spouse cannot be a burglary, although a court order will negate any rights to enter the premises."  (Footnotes omitted.)

While "the offense [of burglary] is not committed by one who breaks and enters his own dwelling or other building," *Stanley v. State*, 57 Ala. App. 83, 84, 326 So. 2d 148, 149 (1976); *Wilson v. State*, 247 Ala. 84, 85, 22 So. 2d 601, 602 (1945), "[i]t has, however, also been held that the mere existence of the marriage relationship does not preclude the one spouse from committing burglary against the other spouse."  12A C.J.S. *Burglary* § 38 (1990 Supp.) (footnote omitted).

*Id*. at 1224.

The Court finds that the issue was unsettled in Alabama and that there was law supporting both sides of the question.  Again, basing an ineffective assistance claim on case law that is unsettled would be to engage in the kind of hindsight examination of effectiveness prohibited by the Supreme Court in *Strickland*. Additionally, focusing solely on the issue as a matter of law ignores Gladden's efforts to convince the jury that White did not commit burglary under the facts of this case.

(Opinion at 10-11).

In view of the lengthy and difficult jury instructions quoted above, counsel reasonably attempted to convince the jury that the petitioner had not committed a burglary under the unusual circumstances of their marital relationship.  Under the deferential standards of § 2254(d), this court cannot now conclude that the Court of Criminal Appeals decision was unreasonable.

### b.  The *Cladd* Decision

The petitioner next asserts that the Court of Criminal Appeals' determination that counsel's reliance on the *Cladd* dissents was reasonable is flawed because of the significant difference in Florida and Alabama law at the time.  (Pet. Brief at 20).  He notes that at the time of White's trial, "Alabama law expressly eliminated the alternative basis employed by the *Cladd*

36

dissenters." *Id*. Therefore, the petitioner concludes that "the circuit court erred as a mater of law when it held that trial counsel could have reasonably relied on the *Cladd* dissent." *Id*. The respondents argue that the majority holding in *Cladd* was distinguishable from White's situation premised on the facts.[11] *Id*. at 53.

In analyzing the application of *Cladd*, the court believes beginning with a review of *Vasquez* is helpful. In that case, the Florida District Court of Appeal was presented with the question of "whether it is a burglary for a husband who is physically separated from his wife to enter upon premises possessed by his wife without the wife's consent with intent to commit an offense therein." *Vasquez*, 350 So. 2d at 1095. The evidence was that "[t]he defendant had been physically separated from his wife for a year without either party having obtained a marriage dissolution, legal separation or restraining order. He formerly resided with his wife at this apartment prior to their physical separation. All the bills for the apartment were still made out in the defendant's name although his wife had always paid for them." *Id*. at 1096. The court held that "in the absence of a legal separation agreement, restraining order or court decree limiting or ending consortium rights of the parties, each spouse has a legal right to be with the other spouse on premises possessed by either or both spouses so long as the marriage relationship exists and that an entry on to such premises by either spouse cannot be a burglary" under Florida law. *Id*. at 1095. In its analysis, the court stated:

> In the instant case, the wife had a possessory right in the apartment which the defendant entered without the wife's consent with intent to physically abuse the wife. Ordinarily, this would constitute a burglary if the parties had been

---

[11]In *Cladd*, the court stated, "We hold that the Second District correctly decided that, <u>under the particular facts of this case</u>, the defendant could be guilty of burglary of his estranged wife's apartment, and we approve its decision. The factual situation is narrow. . . ." *Cladd*, 398 So. 2d at 443 (emphasis added).

unmarried.  But the parties were married and this fact makes a crucial difference
because the defendant for purposes of the burglary statute had a legal right to be on
the premises with his wife at the time of the entry.

*Id*. at 1097.

In *Cladd*, the issue was "whether a husband who is physically but not legally separated

from his wife, can be guilty of burglary when he enters premises, possessed only by the wife and

in which he has no ownership or possessory interest, without the wife's consent and with intent to

commit an offense therein." *Cladd*, 398 So. 2d at 443.  The evidence in that case was that "[t]he

defendant and his wife had been separated for approximately six months, although there was no

formal separation agreement or restraining order.  He had no ownership or possessory interest in

his wife's apartment and had at no time lived there.  One morning, he broke through the locked

door of her apartment with a crowbar, struck her, and attempted to throw her over the second floor

stair railing." *Id*.  Four justices of the Florida Supreme Court overruled *Vasquez* and held that

"under the particular facts of this case, the defendant could be guilty of burglary of his estranged

wife's apartment, and we approve its decision." *Cladd*, 398 So. 2d at 443.  In its analysis, the

court stated:

> We reject the defendant's contention that the marriage relationship and the
> right of consortium deriving therefrom preclude the State from ever establishing
> the nonconsensual entry requisite to the crime of burglary and we disapprove the
> Third District's contrary ruling in *Vazquez*.  Since burglary is an invasion of the
> possessory property rights of another, where premises are in the sole possession of
> the wife, the husband can be guilty of burglary if he makes a nonconsensual entry
> into her premises with intent to commit an offense, the same as he can be guilty of
> larceny of his wife's separate property.  In *State v. Herndon*, 158 Fla. 115, 27 So.
> 2d 833 (1946), discussing a wife's separate property rights, we held that a husband
> could be charged with the larceny of his wife's separate property, and we
> explained:

>> In a society like ours, where the wife owns and holds

38

> property in her own right, where she can direct the use of her
> personal property as she pleases, where she can engage in business
> and pursue a career, it would be contrary to every principle of
> reason to hold that a husband could ad lib appropriate her property.
> If the common-law rule was of force, the husband could collect his
> wife's pay check, he could direct its use, he could appropriate her
> separate property and direct the course of her career or business if
> she has one.  We think it has not only been abrogated by law, it has
> been abrogated by custom, the very thing out of which the common
> law was derived.

> 27 So. 2d at 835.  The defendant's consortium rights did not immunize him from
> burglary where he had no right to be on the premises possessed solely by his wife
> independent of an asserted right to consortium.

> The defendant's estranged wife was in sole possession of the premises into
> which he broke with intent to assault her.  The district court correctly reversed the
> trial court's dismissal of the burglary and attempted burglary charges.

*Id*. at 444.

One of the three dissenting justices stated that the burglary prosecution should not be

permitted because "[t]he legislature has met a number of times since the principles of the *Vazquez*

and *Wilson*[12] cases were announced.  I believe the fact that the legislature failed to modify or

clarify the burglary statute in response to the judicial development of these principles indicates

that the legislative intent was properly derived in those cases."  *Id*. at 445.  The other two

dissenting justices concluded that "our criminal courts should not be involved, in fact or as a

threat, in domestic disputes which involve an invasion of one spouse's claim of separateness or

privacy.  Personal assaults, I repeat, are different, and in those cases perhaps different

considerations should pertain."  *Id*. at 446.

---

[12]In *Wilson v. State*, 359 So. 2d 901 (Fla. 3d DCA), *cert. denied*, 356 So. 2d 716 (Fla. 1978), the court held that entry into a father-in-law's home, where the defendant's wife was temporarily residing, with the intent to assault her constituted burglary.

To the extent that counsel for the petitioner asserts that it was unreasonable for the Alabama courts to find that trial counsel's reliance on the *Cladd* dissents was reasonable because of the significant difference in Florida and Alabama law at the time (Pet. Brief at 20), the court disagrees. Specifically, the petitioner's counsel argues:

> In addition, Alabama had abolished the common law doctrine of interspousal immunity in 1917-- no legal bar prohibited a woman from suing her husband in tort for trespass. . . . Indeed, the Legislature enacted the Married Women's Act which, among other things, preserved a woman's independent property rights notwithstanding marriage. . . . Therefore, unlike Florida, a woman in Alabama had her right to control her own property protected by statute. Thus, Alabama law expressly eliminated the alternative basis employed by the *Cladd* dissenters. . . . As a result, the circuit court erred as a matter of law when it held that trial counsel could have reasonably relied on the *Cladd* dissent.

(Pet. Brief at 20). The language in the *Cladd* majority opinion cited above demonstrates that the Florida courts had recognized a "wife's separate property rights." *Id*. at 444. Thus, the distinction espoused by the petitioner is not dispositive.

To the extent that the petitioner further notes that at least one of the *Cladd* dissents is distinguishable because it stated that "this case does not involve spouses who are . . . already in . . . a pending dissolution proceeding," the court notes the factual distinction, but does not find it to be dispositive. (Pet. Brief at 20, n.8 (citing *Cladd*, 398 So. 2d at 444-45)). This conclusion is particularly true in view of the trial testimony cited above demonstrating the on-again/off-again relationship of the petitioner and Mrs. White.

Premised on the foregoing, this aspect of the petitioner's claim of ineffective assistance does not entitle him to relief. The determination of the Alabama Court of Criminal Appeals that "trial counsel['s] attempt to argue that as a matter of law White could not commit a burglary due to his marriage to the victim was not unreasonable" is not an unreasonable determination

40

warranting relief under § 2254(d).  (Opinion at 13).

### c.  Purported Misrepresentations of the Law

Thirdly, the petitioner asserts that trial counsel misrepresented the law to him.  The

petitioner argues that the Court of Criminal Appeals "unreasonably concluded that White was not

denied the effective assistance of counsel because trial counsel (1) did not specifically direct

White to reject the plea bargain, and (2) could have convinced the jury as a factual matter that

White did not commit burglary."  (Pet. Brief at 21).  Still further, he claims that  "[t]rial counsel

totally failed to advise White of the critical and damning facts the State planned to present at trial

because he had failed to conduct any pre-trial investigation" (*id*.) and "[t]he reasoning of the

prosecution 'that trial counsel could convince the jury to accept his arguments presumes that trial

counsel intended to invite the jury to ignore the court's instructions on the law -- a phenomenon

known as "jury nullification"'" (*id*. at 22).

### i.  Advice to Reject the Plea

Regarding the finding of the Court of Criminal Appeals that counsel did not advise the

petitioner to reject the plea, the petitioner asserts that counsel "cannot cover-up his mistaken and

incomplete legal research by rendering himself mute at the critical moment when he must 'offer

his informed opinion as to what plea should be entered.'"  (Pet. Brief at 21 (citing *Von Moltke v.*

*Gillies*, 332 U.S. 708, 721 (1948)).  He goes on to conclude that counsel had "a 'constitutional

duty' to speak and to advise White correctly" and that "White was entitled to know that Alabama

law had rejected his trial counsel's arguments <u>before</u> he made the crucial decision not to accept a

plea that would have spared his life."  *Id*. at 21 (underlining in original).

The petitioner's argument that counsel was deficient in this regard was rejected by the trial

court and then again by the Court of Criminal Appeals.  (Opinion at 13-14).  Specifically, the trial court stated:

> The Court finds that the issue was unsettled in Alabama and that there was law supporting both sides of the question.  Again, basing an ineffective assistance claim on case law that is unsettled would be to engage in the kind of hindsight examination of effectiveness prohibited by the Supreme Court in <u>Strickland</u>.  Additionally, focusing on the issue as a matter of law ignores Gladden's efforts to convince the jury that White did not commit the burglary under the facts of this case.

> There was no advice to reject the offer.  Gladden stated plainly that he would offer no such advice when the plea was one that would keep his client from being executed.  He informed White that, at best, the chance of prevailing was a toss-up and affirmatively informed White that, if they lost the issue, Judge Banks "would sentence him to death."  White made the decision to reject the offer and admits in his affidavit that Gladden fully informed him of the offer and told him his chance of prevailing was no better than tossing a coin.  (White Affidavit at p. 6)  The Court finds that Gladden's conduct in reference to the plea bargain does not rise the level required for a finding of deficient performance.  To advise White that he had a chance of prevailing on the burglary issue was not outside the "wide range of reasonably profession assistance."

(Opinion at 11).  Adopting the reasoning of the Rule 32 court, the Court of Criminal Appeals agreed that the law was unsettled at the time of the plea and that trial counsel was not deficient in this regard.  *Id*. at 12-13.  Reviewing these findings in the context of the entire record, this court cannot conclude that the determination of the Court of Criminal Appeals was unreasonable.  Thus, the petitioner is entitled to no relief on this claim.[13]

Additionally, this court finds the "no prejudice" determination of the trial court, which was adopted by the Court of Appeals, to be correct under the applicable standard of review in this matter.  The trial court stated:

---

[13]Additionally, as already discussed, the petitioner's argument regarding the status of Alabama law on burglary did not preclude counsel from making the jury arguments he did advance.

Alternatively, White has failed to prove that had Gladden advised him differently, he would have accepted the offer.  He contends that if Gladden had informed him that he had absolutely "no legitimate chance" at acquittal, he would have accepted the offer.  The Court does not doubt White's assertion in that regard.  Unless an individual wanted the death penalty, almost anyone would presumably accept the offer if told that a conviction and death sentence were "virtually assured" if they proceeded to trial.  As noted above, however, the Court does not find that the defense [had "no legitimate chance."  Even if Gladden's advice was based, in part, on an erroneous] assumption that *Vasquez* was good law in Florida, it does not follow that the defense had no chance of success.  White did not reject the offer based upon the decision of a Florida court.  He rejected the offer because he believed that avoidance of a capital murder conviction "was <u>possible</u> under my lawyer's legal theory."  (White Affidavit at 6)

(Opinion at 11-12).  In resolving this issue, the Court of Criminal Appeals further adopted the

finding of the trial court concerning the "objective" evidence as follows:

Finally, in support of his claim, White offers self-serving statements that he would have accepted the offer had he been properly advised.  These statements are not enough.  The only objective evidence White relies on to support his claim is willingness to accept a straight murder plea prior to trial.  A murder plea, however, would have left White with a chance to get out of prison someday.  Conversely, a guilty plea to capital murder would result in a sentence of life without parole and no hope of ever being set free.  The objective evidence shows that White was willing to take his chances in an effort to, as is set forth in his affidavit, avoid a capital murder conviction.  (White Affidavit at 6)  The Court finds that White has failed to prove prejudice related to this claim, therefore, it is denied.

C.R. 1748-1754.

(Opinion at 12).  Regardless of which test the Eleventh Circuit ultimately might apply in such

instances, this evidence is not adequate to undermine the reasonableness of the state court

determinations.  This court cannot find under the circumstances that the determination of the

Court of Appeals to accept this conclusion was unreasonable.

### ii.  Purported Lack of Pretrial Investigation

Regarding the next prong of the third claim, that the Alabama courts erroneously

concluded that trial counsel could have convinced the jury as a factual matter that White did not commit the burglary, the petitioner asserts that counsel failed to conduct pretrial investigation and failed to inform the defendant of the critical and damning facts.  (Pet. Brief at 21).  Rejecting this assertion, the trial court found that "Gladden met with White and he met with police officers who had been at the crime scene.  Gladden read the police reports, reviewed the District Attorney's file; reviewed the physical evidence, photographs, drawings, and diagrams concerning the crime scene; and reviewed witnesses [sic] statements."  (Opinion at 14).  The court also noted that, although defense counsel did not examine the "particular house" where the crimes occurred, he was familiar with the location as he had previous trials involving that street.  *Id*.  With regard to the petitioner's challenge that counsel failed to investigate the "no murderous intent" argument, the trial court held that this omission was not ineffective assistance of counsel in that it was a matter of trial strategy and the petitioner failed to show any prejudice.  *Id*. at 15-17.  The Court of Criminal Appeals found no error in the determination of the trial court on this aspect of the petitioner's claim.  *Id*. at 17.

The petitioner next asserts that counsel was unaware of the testimony that the eyewitnesses planned to give, he failed to listen to the audiotape of White's confession, and he failed to investigate the fact that White purchased the shotgun only several hours before the incident.  (Pet. Brief at 22).  Contrary to these assertions, the trial court found that "Gladden read the witness' statements prior to trial" and "obtained additional relevant information from the officers who investigated the case."  (Opinion at 17).  It also found that Gladden knew what was on the audiotape before he listened to it and he was not "surprised at its content and manner."  *Id*. at 19.  Once again, the Court of Criminal Appeals found no error in the trial court's determination that

44

White failed to  prove his claims of deficient performance and prejudice.  *Id*. at 20.

Upon a review of the record, this court cannot find that the determinations of the Court of Criminal Appeals were unreasonable as to either prong of the *Strickland* test regarding the failure to investigate allegations.  To the contrary, court finds that the conclusions are supported by the record.

### iii.  Purported Attempt at Jury Nullification

Regarding the petitioner's next allegation, counsel's purported attempt at "jury nullification," the petitioner asserts that counsel offered no evidence in support of his defense at trial.  This issue was addressed by the tri

al court during the Rule 32 proceedings.  Contrary to the petitioner's assertions, that court found that counsel had presented evidence in support of the    no-burglary argument.  (Opinion at 8 (citing C.R. 1722-25)).  It also found that his "attempt to convince the jury that White was not guilty of burglary, regardless of whether or not an absolute privilege was found, was not 'outside the wide range of reasonable professional assistance.'"  *Id*.  The Court of Criminal Appeals held as follows:

> For the reasons already discussed, it was not unreasonable for trial counsel to attempt to argue that as a matter of law White could not commit a burglary due to his marriage to the victim.  Also, the record supports the circuit court's finding that in the alternative, the defense presented evidence attempting to show that as a factual matter White had always, even during acrimonious times and other separations during the marriage, been allowed to enter the marriage residence at his will.
>
> For the reasons stated in the circuit court's order, quoted [above], we find that at the time of the trial, reasonable minds in Alabama could differ about the viability of trial counsel's "no burglary" theory of defense and that trial counsel

was not deficient in this regard, nor did White suffer prejudice due to Gladden's pursuit of this theory of defense.

(Opinion at 13).

Despite the protestations of the petitioner, the court sees no reason to depart from the determination of the Court of Criminal Appeals. The conclusion reached by the state courts was not unreasonable. To the extent that the petitioner argues that his theory of defense "invite[d] the jury to ignore the court's instructions on the law . . . ," this court disagrees. (Brief at 22). Counsel simply was requiring the prosecution to demonstrate the unlawful entry element beyond a reasonable doubt. Had counsel not offered testimony and argument regarding the same, he most likely would have been challenged for failing to do so. As noted previously, the instructions regarding this issue were extensive and detailed. Requiring the prosecution to demonstrate that the entry was legally sufficient to support the verdict was within the range of professional competence required by *Strickland*. This is particularly true in light of the tumultuous history between the petitioner and Mrs. White.

### d. Ability to Intelligently Evaluate the Advice Given

Next, the petitioner asserts that the state courts acted unreasonably in determining that the petitioner could still "intelligently evaluate" the advice and theory of defense offered by his counsel. (Pet. Brief at 24-25). Specifically, he asserts that the ruling was "unreasonable to the extent it was based on an Ohio case, *State v. Weitzel*, 112 Ohio App. 300, 168 N.E.2d 550 (1960), that purportedly held that a spouse could not burglarize the marital residence." (Pet. Brief at 25). Additionally, counsel argues that the decisions from other states "in cases decided *after* White was convicted lend no further credence to trial counsel's flawed research." *Id*. at 27 (italics in

original).  Still further, counsel argues that the Court's reliance on a legal principle "derived from

a general law encyclopedia cannot support its holding."  *Id*. at 28.  Lastly, counsel reiterates that

"the reasoning employed by the *Cladd* dissenters had no foundation in Alabama law."  *Id*.

### i.  Citation to *Weitzel*

The petitioner initially challenges the Court of Criminal Appeals' citation to and reliance

on the holding in *Weitzel*, 168 N.E.2d 550, that "a spouse could not burglarize the marital

residence."  (Pet. Brief at 25).  He states that "the Court of Criminal Appeals inexplicably arrived

at the conclusion that 'there was case law to support Gladden's theory of defense. . . .  However,

the Court of Criminal Appeals was wrong and its decision was an unreasonable application of

*Strickland*."  *Id*. (citation omitted).

In *Weitzel*, the defendant was charged with burglary and larceny of property belonging to

his common law wife.  His defense was that because the victim was his common law wife he

legally could not be guilty of the crimes under Ohio law.  The pertinent issue for the jury was

whether the victim was his common law wife.  Although not specifically referenced in the

opinion, the defense was premised on the existing domestic law of Ohio which explicitly

provided:

> Neither husband nor wife has any interest in the property of the other, except as
> mentioned in section 3103.03 of the Revised Code, the right to dower, and the right
> to remain in the mansion house after the death of either.  Neither can be excluded
> from the other's dwelling, except upon a decree or order of injunction made by a
> court of competent jurisdiction.

Ohio Rev. Code Ann. § 3103.04.  In the subsequent case of *State v. Herrin*, 453 N.E.2d 1104

(Ohio Ct. App. 1982), the court further held that one "can trespass against property of which he is

47

the legal owner." *Herrin*, 453 N.E.2d at 1106.  Herrin was charged with felonious assault, kidnapping and burglary premised on conduct occurring while he was estranged from his wife. He asserted that the court erred in failing to dismiss the burglary charge because he had a "one-half interest in the real estate." *Id.*

Both cases are distinguishable for various reasons.  First, as noted by counsel for the petitioner, Ohio law is different from Alabama law.[14]  Second, the facts in *Herrin* are different due to the fact that "there was a court order restricting [Herrin] from the property except for child visitation." *Id.* at 1106.  These distinctions do not, however, require that this court find that the determination of the Alabama Court of Criminal Appeals was unreasonable.  To the contrary, the differences in the law still did not preclude counsel from advancing his burglary defense as a matter of law or fact under the circumstances.  Additionally, the fact that *Herrin* involved a court order did not impact counsel's position in the White prosecution where there was no court order.

### ii.  Later Decisions from Other States

The petitioner next challenges the respondents' reliance on any decisions "*after* White was convicted." *Id.* at 27 (italics in original).  The Court of Criminal Appeals, however, did not premise its holding on decisions rendered subsequent to the trial; thus, this argument does not afford the petitioner any basis for relief.

----

[14]This court notes that the Ohio Supreme Court did not expressly hold until 1999 that § 3103.04 was inapplicable in the criminal context.  *State v. Shinn*, 2000 WL 781106 (Ohio App. 4 Dist. 2000) (citing *State v. Lilly*, 87 Ohio St. 2d 97, 717 N.E.2d 322 (1999)).  In *Shinn,* the court stated:

> The [*Lilly*] court reasoned that R.C. 3103.04 "was intended to address ownership rights of married persons, matters of a civil nature." *Id.* at 102, 717 N.E.2d 322.  Thus, a spouse "may be criminally liable for trespass and/or burglary in the dwelling of the other spouse who is exercising custody or control over that dwelling." Id. at paragraph one of the syllabus; *see, also*, *State v. O'Neal* (2000), 87 Ohio St. 3d 402, 407, 721 N.E.2d 73 (following *Lilly* to uphold husband's conviction for aggravated burglary of spouse's home).  Thus, the defendant cannot rely upon R.C. 3103.04 to negate a charge of aggravated burglary as a matter of law.

*Id.* at *5 (footnote omitted).

### iii.  General Legal Principles

The petitioner next argues that the Court's reliance on a legal principle "derived from a general law encyclopedia cannot support its holding."  *Id*. at 28.  He further states that if trial counsel had examined the supplement to the treatise cited by the court, "he would have been put on notice that the 'common law' rule did not apply to estranged spouses and that the principal authority he relied upon did not support his theory."  *Id*.  Although the petitioner is correct that the analysis of the Court of Criminal Appeals on direct appeal did include a reference to a treatise articulating that "[s]ome authorities broadly state that a man cannot burglarize his wife's home, and it is considered that the burglary statute is not designed to protect against entries by persons occupying a marital or immediate familial relationship with the legal possessor of property. . . ," that simply was a part of the discussion and not the holding of the court.  *White*, 587 So. 2d at 1224.  It was merely the starting point in the court's discussion recognizing that this issue was a matter of first impression in Alabama.  Accordingly, the petitioner is entitled to no relief on this aspect of his challenge.

### iv.  *Cladd*

Next, the petitioner again asserts that "the reasoning employed by the *Cladd* dissenters had no foundation in Alabama law."  *Id*.  This aspect has previously been discussed.  Arguably, most lawyers would have more fully researched the issue than counsel did in this case.  However, the fact remains that the advice given was determined by the Court of Criminal Appeals to be reasonable.  Even if counsel's research was deficient, he still arrived at a correct conclusion – that the issue was undecided in the criminal context in Alabama, and that other states' decisions on the issue were not consistent.  Thus, the Court of Criminal Appeals was not unreasonable in its

49

determination that petitioner could still "intelligently evaluate" counsel's advice at the plea

bargaining phase of trial.  To reach a contrary conclusion would require a holding that the advice

itself was unreasonable – something that this court, like all the other courts to consider the issue,

declines to do in the present context.

### v.  The Alabama Court's Findings of Fact

Fifth, the petitioner claims that the Court of Criminal Appeals unreasonably based its

decision on facts that were not adduced in the original trial proceeding.  The petitioner specifically

cites the following language in Court of Criminal Appeals' memorandum opinion:

> [T]he record supports the Circuit Court's finding in the alternative, the defense
> presented evidence attempting to show that as a factual matter White had always,
> even in acrimonious times and other separations during the marriage, been *allowed*
> to enter the marriage residence *at will*.

(Opinion at 13 (italics added)).  The petitioner specifically claims that "the state trial court that

considered White's Rule 32 petition never made such a finding and the trial record does not

support this statement."  (Pet. Brief at 31).  However, the "Findings of Fact, Conclusions, and

Order" issued by the trial court contained the following:

> It is also important to note that Gladden's strategy encompassed both "convincing
> a trier of fact or convincing the judge as a matter of law" . . . .  Gladden's defense
> was that White could not commit burglary because he was privileged to enter the
> premises.  In other words, if White was not privileged as a matter of law based
> upon his marriage to the victim, the strategy could have still succeeded in that
> White's jury could have found a privilege to exist in this case.
>
>       . . . .  Gladden … had obtained information that both White and the victim
> had each moved in and out of the marital residence on previous occasions. . . .
> Gladden argued and presented evidence in support of this point at trial. . . .
> Additionally, Gladden obtained and presented evidence that there had been no
> legal dissolution of the marriage and that there was absolutely no order, court or
> otherwise, preventing or restraining White from entering the marital residence. . . .

50

(Opinion at 8).

This court is of the opinion that the state courts' determination that Gladden's attempt to convince the jury that White was not guilty of burglary, regardless of whether an absolute privilege was found, was not "outside the wide range of reasonably professional assistance." (Opinion at 11, 13 (citing C.R. 1722-25)).  Even a cursory review of the trial transcript reveals that Gladden advanced this theory during his opening statement (C.R. 1874-77), cross examination of the state's witnesses (C.R. 1901, 1953-54, 1991, 2029), and closing arguments (C.R. 2211, 2215-21).  Additionally, the state countered this portion of Gladden's theory in its opening remarks (C.R. 1872) and closing arguments (C.R. 2198-2200).

The petitioner points out with emphasis that Gladden "never presented any evidence at trial that White believed he had permission to enter his wife's home or did so at will at any time during this, or any prior, separation."  (Pet. Brief at 31 (underlining in original)).  Viewed alone, the words "allowed" and "at will" that were used by the Court of Criminal Appeals could give the impression that the court mistakenly found evidence of a "permission" defense.  However, when the words are placed in context, the findings of the state courts become evident.  First, the fact that the trial court referenced Gladden's attempt to demonstrate privilege, and never once suggested an attempt to prove permission, makes clear that the Court of Criminal Appeals was similarly referring to the privilege defense.  Second, the context further reveals that the Court of Criminal Appeals was discussing "privilege."  In the sentence immediately preceding the language, the court referenced the petitioner's claim that trial counsel "presented no evidence at trial demonstrating that White had any ongoing right to enter the house."  (Opinion at 13).  Although the choice of words may be less than perfect, the reference to an "ongoing *right* to enter the

51

house" again makes it clear that the court was discussing a defense of marital privilege, and not permission. *Id*. As discussed above, counsel's attempts to persuade the jury that the petitioner was "privileged" to enter his wife's home was specifically noted by the trial court and supported by the record. Accordingly, the Court of Criminal Appeals was not unreasonable in holding that the trial court's finding was supported by the record.

### 3. Prejudice

The petitioner also claims that the Court of Criminal Appeals never considered his claim that the circuit court erred in finding that White was not prejudiced as a result of counsel's erroneous advice. (Pet. Brief at 32). Although the Court of Criminal Appeals did not discuss prejudice in great detail, it did state that the petitioner did not "suffer prejudice due to Gladden's pursuit of this [no-burglary] theory of defense." (Opinion at 13). The respondents argue that the court's finding concerning the lack of prejudice is correct. (Res. Brief at 67).

The holding of the Court of Criminal Appeals was not unreasonable in that *Strickland* is a conjunctive test. A detailed prejudice determination was not necessary to the court's resolution of the matter. Even if the Court of Criminal Appeals' conclusion on the first-prong was unreasonable, the petitioner would still be entitled to no relief due to his failure to satisfy the second prong of *Strickland*. The petitioner must show that *but for* the claimed error, the advice probably would have been different and that the petitioner probably would have entered a guilty plea. He has not shown either.

The petitioner has not demonstrated that counsel's advice would have differed at that juncture in the light of additional research. Although the Court of Criminal Appeals did not make mention of it, factual distinctions exist between this case and certain of the out-of-state cases cited

by the petitioner.  For example, some of those decisions were grounded in situations where (1) the estranged spouse never resided in the subject premises, *see, e.g., Cladd*, 398 So. 2d at 443 (the defendant "had at no time lived [at the apartment he was accused of burglarizing]"); *State v. Schneider*, 673 P.2d 200, 203-04 (Wash. 1983) (defendant had "never actually lived in the house during the time in question"); *State v. Miller*, 520 P.2d 1113, 1115 (Ariz. 1974) (defendant "had never been to the apartment before that night"); and *Parham v. State*, 556 A.2d 280, 284 (Md. 1989) (defendant had "spent only a week in the . . . home before the separation" and had few belongings there); (2) an affirmative court order restrained the defendant spouse from the premises, *see, e.g., Matthews v. Commonwealth*, 709 S.W.2d 414, 420 (Ky. 1986) (defendant was under a court order "to stay away from premises"); or (3) the wife "repeatedly refused to admit [the defendant] on the night in question."  If trial counsel had discovered these cases through further research – as the petitioner argues he should have – he could just as likely have factually distinguished them based on the absence of a restraining order or existence of the petitioner's long-standing residence in the subject premises in this case.[15]

Furthermore, the petitioner's self-serving statements that he would have plead guilty to capital murder – even when viewed in conjunction with his earlier attempts to plead guilty to simple murder in exchange for a significantly more palatable sentence – do not provide the court with the evidence necessary to show that the determination of the state courts was unreasonable.

---

[15]This court does note that other holdings and statements in the cases cited by the petitioner do make the legal and factual arguments in this case more difficult.  *See, e.g., State v. Dively*, 431 N.E.2d 540, 543 (Ind. 1982) (defendant had been forbidden from entering the property during pending divorce proceeding and she had no interest in the property); *Knox v. Commonwealth*, 364 S.E.2d 4 (Va. 1983) ("when a wife is living apart from her husband in her own dwelling, one in which he has no proprietary interest, the husband's right of consortium is subordinate to the wife's right of exclusive possession). However, that difficulty does not mean that the defense should have been abandoned.

**IV.  CONCLUSION**

Based on the foregoing, the court finds that the petitioner's application for habeas corpus relief premised on his allegations of ineffective assistance of counsel at the time of the plea is due to be denied.  An appropriate order will be entered.

**DONE**, this 1st day of April, 2008.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE

54