## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| LEROY WHITE, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) |
| | )     5:02-cv-00524-KOB |
| RICHARD ALLEN, Commissioner | ) |
| Alabama Department of Corrections, | ) |
| | ) |
| Respondent. | ) |

## MEMORANDUM OPINION

This matter is again before the court on the petitioner's motion to alter or amend the judgment entered in this case, pursuant to FED. R. CIV. P. 59(e), and for a stay of execution. (Doc. 43).[1]  The motion was filed at 10:35 a.m. this morning.  A supplemental affidavit in support of the motion was file at 4:32 p.m.  (Doc. 45).  The respondent's opposition to the motion was filed at 4:56 p.m.  (Doc. 46).  The petitioner is scheduled to be executed tomorrow, January 13, 2011, at 6:00 p.m.

The court previously denied the petitioner's first motion for relief from the judgment of this court (doc. 33) and for a stay of his execution date (doc. 37) on January 4, 2011.  (Doc. 40 & 41).  The Eleventh Circuit Court of Appeals affirmed this court's denial of relief.  (Doc. 44).

## DISCUSSION

The petitioner requests that this court grant him a stay of execution, conduct an evidentiary hearing if the court seeks additional evidence regarding his earlier filed Rule 60(b) motion, and grant him "equitable relief pursuant to Rule 60(b) so that he can proceed with a

---

[1] References herein to "Doc. ___" are to the electronic document numbers assigned by the Clerk of the Court.

timely appeal of his case." (*Id*. at 8). He premises his motion on the assertion that his counsel abandoned him without his knowledge, resulting in no appeal of this court's decision denying him relief on the merits. (*Id*. at 2).

The petitioner also asserts that the requested relief should be granted because the United States Supreme Court recently granted *certiorari* review in *Lafler v. Cooper*, No. 10-209, 2011 WL 48029 (U.S. Jan. 7, 2011). He argues that "[t]he Supreme Court's grant of certiorari in Lafler demonstrates that 'reasonable jurists would find [this Court's] assessment of [Mr. White's] constitutional claims debatable,' Slack v. McDaniel, 529 U.S. 473, 484 (2000), and highlights Mr. White's need for a stay of execution and an equitable remedy pursuant to Rule 60(b) so that he can pursue his appeal of the claims in his habeas petition." (Doc. 43 at 6-7).

The respondent counters that the petitioner is not entitled to any relief because he has failed to establish the existence of newly-discovered evidence that would require this court to alter or amend its judgment, or any manifest errors of law or fact. (Doc. 46 at 2). Additionally, the respondent asserts that petitioner's arguments are without merit. (*Id*.)

The law is clear concerning the granting a Rule 59 motion:

> "The only grounds for granting [a Rule 59] motion are newly-discovered evidence or manifest errors of law or fact." *In re Kellogg*, 197 F.3d 1116, 1119 (11th Cir. 1999). "[A] Rule 59(e) motion [cannot be used] to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." *Michael Linet, Inc. v. Village of Wellington, Fla*., 408 F.3d 757, 763 (11th Cir.2005).

*Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007). As noted by the respondent, the Court in *Arthur*, stated that the unsworn affidavit that was submitted in that case was not "newly discovered" because "[i]t could have been discovered during the five years after Melson

2

repudiated his first affidavit, and filed with the complaint." *Id.*

In this case, the affidavits from the petitioner and his former counsel, G. James Benoit, Jr., could have been "discovered" and produced with the original Rule 60(b) motion or shortly thereafter. The petitioner's present counsel offers no explanation for the failure to submit these affidavits previously. Accordingly, the respondent argues that the affidavits should not be considered by this court. Under the constraints of Rule 59 and *Arthur*, this court agrees. By filing this motion and supplemental evidence, the petitioner and his counsel are attempting to "relitigate old matters ... or present evidence that could have been raised prior to entry of judgment." *Arthur*, 500 F.3d at 1343 (citing *Michael Linet, Inc.*, 408 F.3d at 763). This court cannot grant relief on such a basis.

Even if this court accepts the affidavits as a sufficient showing that the petitioner's counsel improperly abandoned the prosecution of his habeas corpus case, he still has not demonstrated any right to relief on an underlying claim that could be raised on appeal. The Eleventh Circuit Court of Appeals on January 11, 2011, stated that "[a] petitioner asking this Court for a stay of execution must demonstrate, *inter alia*, that he has a substantial likelihood of success on the merits of the underlying claim he seeks to have reviewed. *See In re Holladay*, 331 F.3d 1169, 1176 (11th Cir. 2003)." Despite this specific statement from the Court of Appeals, the petitioner still has offered nothing but the Supreme Court's grant of *certiorari* in *Lafler* to show a likelihood of success on the merits of any underlying claim. (Doc. 43 at 6).

The only substantive issue the petitioner offers in support of his motion for relief is that "his trial attorney provided him with erroneous legal advice about his probability of success at trial, which caused settlement to fail." (Doc. 43 at 6-7). This court fully examined the merits of

3

the petitioner's contentions related to this issue previously and found that he was entitled to no

relief on any claims related to the actions of his counsel concerning advice about the burglary

component of the  felony murder charge.

In pertinent part, this court stated:

Although Alabama case law generally was not supportive of counsel's position, this court cannot find that it was unreasonable for the Court of Criminal Appeals to conclude that counsel's advice was reasonable.  The Court of Criminal Appeals was not labeling the advice as "good" or "strong," or even suggesting that it was better than other available defenses.  The holding merely acknowledges that counsel's advice and trial theory was one of myriad approaches that could have legitimately been employed by a reasonable lawyer acting in the petitioner's defense.  The court stated:

In its review of White's case, the Court of Criminal Appeals [on direct appeal], extensively discussed the issue in question, after designating it "one of first impression" in Alabama. *White v. State*, 587 So. 2d 1218, 1222-27 (Ala. Crim. App. 1990), *aff'd*, 587 So. 2d 1236 (Ala. 1991), *cert. denied*, 502 U.S. 1076 (1992).  In setting forth the following, the Court noted that the issue was not one-sided:

"Some authorities broadly state that a man cannot burglarize his wife's home, and it is considered that the burglary statute is not designed to protect against entries by persons occupying a marital or immediate familial relationship with the legal possessor of property.  So, it is held that in absence of a legal separation agreement, or restraining order, or court decree limiting or ending the consortium rights of the parties, each spouse has a legal right to be with the other spouse on premises possessed by either or both spouses so long as the marriage exists, and entry onto such premises by either spouse cannot be a burglary, although a court order will negate any rights to enter the premises." (Footnotes omitted.)

While "the offense [of burglary] is not committed by one who breaks and enters his own

> dwelling or other building," *Stanley v. State*, 57 Ala.
> App. 83, 84, 326 So. 2d 148, 149 (1976); *Wilson v.
> State*, 247 Ala. 84, 85, 22 So. 2d 601, 602 (1945),
> "[i]t has, however, also been held that the mere
> existence of the marriage relationship does not
> preclude the one spouse from committing burglary
> against the other spouse." 12A C.J.S. *Burglary* § 38
> (1990 Supp.) (footnote omitted).

> *Id*. at 1224.

> The Court finds that the issue was unsettled in Alabama
> and that there was law supporting both sides of the question.
> Again, basing an ineffective assistance claim on case law that is
> unsettled would be to engage in the kind of hindsight examination
> of effectiveness prohibited by the Supreme Court in *Strickland*.
> Additionally, focusing solely on the issue as a matter of law
> ignores Gladden's efforts to convince the jury that White did not
> commit burglary under the facts of this case.

(Opinion at 10-11).

> In view of the lengthy and difficult jury instructions ..., counsel reasonably
> attempted to convince the jury that the petitioner had not committed a burglary
> under the unusual circumstances of their marital relationship. Under the
> deferential standards of § 2254(d), this court cannot now conclude that the Court
> of Criminal Appeals decision was unreasonable.

(Doc. 25 at 35-36). This court also noted the following additional discussion of the Alabama

Court of Criminal Appeals concerning the plea issue:

> The record shows that the only offer made by the State was one of life
> without parole in exchange for a plea of guilty to capital murder. Gladden
> testified that, "on more than one occasion," he attempted to obtain a plea offer for
> non-capital murder or manslaughter, but was unsuccessful. (Gladden 1998 Depo.
> at p. 92-93) Regarding the State's offer, Gladden testified that he relayed the offer
> to White as follows:

> > I told him what the offer was. I told him it was entirely up
> > to him whether - It was his decision whether to take it or not. He
> > asked me what my opinion was. I tried to give him, the best I
> > could, the feel I had of what we could do and not do with the case.

5

> I know I told him that it was my opinion that the least he
> would come out with would be a murder conviction and the most
> that he would be the death penalty and this was halfway in between
> that.  I told him, the best I recall, he'd have no more than a 50/50
> chance of not being convicted of the capital murder, and that if he
> was convicted of capital murder, that I felt like based on Judge
> Banks' record that he would sentence him to death and he made the
> decision not to take it.

> (Gladden 1994 Depo. at 199-200)

> When asked if he affirmatively recommended to White a
> rejection of the plea offer, Gladden stated unequivocally that he
> would never affirmatively recommend that "someone not accept an
> offer that will definitely keep them from being executed."

> (Gladden 1994 Depo. at 204)

(Doc. 25 at 10).  This court further quoted the Court of Criminal Appeals' conclusion regarding

the alleged ineffectiveness of counsel regarding the law on burglary:

> The Court finds that the issue was unsettled in Alabama and that there was
> law supporting both sides of the question.  Again, basing an ineffective assistance
> claim on case law that is unsettled would be to engage in the kind of hindsight
> examination of effectiveness prohibited by the Supreme Court in *Strickland*.
> Additionally, focusing solely on the issue as a matter of law ignores Gladden's
> efforts to convince the jury that White did not commit burglary under the facts of
> this case.

> There was no advice to reject the offer.  Gladden stated plainly that he
> would offer no such advice when the plea was one that would keep his client from
> being executed.  He informed White that, at best, the chance of prevailing was a
> toss-up and affirmatively informed White that, if they lost the issue, Judge Banks
> "would sentence him to death."  White made the decision to reject the offer and
> admits in his affidavit that Gladden fully informed him of the offer and told him
> his chance of prevailing was no better than tossing a coin.  (White Affidavit at p.
> 6)  The Court finds that Gladden's conduct in reference to the plea bargain does
> not rise the level required for a finding of deficient performance.  To advise White
> that he had a chance of prevailing on the burglary issue was not outside the "wide
> range of reasonably profession [sic] assistance."

> Alternatively, White has failed to prove that had Gladden advised him

6

differently, he would have accepted the offer.  He contends that if Gladden had informed him that he had absolutely "no legitimate chance" at acquittal, he would have accepted the offer.  The Court does not doubt White's assertion in that regard.  Unless an individual wanted the death penalty, almost anyone would presumably accept the offer if told that a conviction and death sentence were "virtually assured" if they proceeded to trial.  As noted above, however, the Court does not find that the defense [had "no legitimate chance."  Even if Gladden's advice was based, in part, on an erroneous] assumption that *Vasquez* was good law in Florida, it does not follow that the defense had no chance of success.  White did not reject the offer based upon the decision of a Florida court.  He rejected the offer because he believed that avoidance of a capital murder conviction "was <u>possible</u> under my lawyer's legal theory."  (White Affidavit at 6)

Finally, in support of his claim, White offers self-serving statements that he would have accepted the offer had he been properly advised.  These statements are not enough.  The only objective evidence White relies on to support his claim is willingness to accept a straight murder plea prior to trial.  A murder plea, however, would have left White with a chance to get out of prison someday.  Conversely, a guilty plea to capital murder would result in a sentence of life without parole and no hope of ever being set free.  The objective evidence shows that White was willing to take his chances in an effort to, as is set forth in his affidavit, avoid a capital murder conviction.  (White Affidavit at 6)  The Court finds that White has failed to prove prejudice related to this claim, therefore, it is denied.

C.R. 1748-1754

(Doc. 25 at 13-14).

The petitioner has offered nothing in his present motion that gives this court pause in finding that he has not shown entitlement to relief concerning any underlying substantive issue that might be raised in a belated appeal.  To the contrary, the court remains confident in its determination of the matter.  This confidence is particularly true in view of the differential standard of review provided by 28 U.S.C. § 2254(d).

Finally, this court finds that the petitioner's reliance on the grant of *certiorari* review by the United States Supreme Court in *Lafler* is misplaced.  In *Cooper v. Lafler*, 376 Fed. Appx.

563 (6th Cir. 2010), the Sixth Circuit, in an unpublished decision, held that a federal habeas

corpus petitioner was denied effective assistance of counsel where his attorney's incorrect legal

advice caused him to turn down a guilty plea offer. *Id*. at 570.  Additionally, the Court found that

the evidence showed a reasonable probability that the petitioner would have accepted the plea

offer if he had been properly advised. *Id*. at 571.  The respondent filed a petition for *writ of*

*certiorari* in the United States Supreme Court.  The Supreme Court granted *certiorari* on January

7, 2011, to consider the following question: "Is a state habeas petitioner entitled to relief where

his counsel deficiently advises him to reject a favorable plea agreement but the defendant is later

convicted and sentenced pursuant to a fair trial?"  (Doc. 46 at 14 (citing *Lafler*, No. 10-209, 2011

WL 48029 (U.S. Jan. 7, 2011)).  The Court also ordered briefing on the following additional

question: "What remedy, if any, should be provided for ineffective assistance of counsel during

plea bargain negotiations if the defendant was later convicted and sentenced pursuant to

constitutionally adequate procedures?"  *Id*.

    *Lafler* is factually and legally distinguishable for a number of reasons.  First, unlike the

present case, counsel in *Lafler* informed the petitioner that he "could not" be convicted of assault

with intent to commit murder under the facts.  *Lafler*, 376 Fed. Appx. 563 at 570-71.  Second,

unlike the present case, counsel in *Lafler* "focused" on an incorrect legal rule in advising the

petitioner not to accept the state's plea offer.  *Id*.  Third, in *Lafler*, the prosecution argued that the

petitioner had not established any prejudice except by "his 'own self-serving statement,'" and

that argument was rejected by the Sixth Circuit.  *Id*. at 571-72.  In this case, as cited above, the

Alabama Court of Criminal Appeals reviewed the objective evidence and found that the

petitioner "was willing to take his chances in an effort to, as is set forth in his affidavit, avoid a

8

capital murder conviction."[2]  (Doc. 25 at 14 (citing *White v. State*, CR-98-0722, slip op. at 12 (quoting *White v. State*, CC 89-0011.60EDF))).

Finally, the petitioner's claims have been fully raised and rejected by numerous courts including the Rule 32 Circuit Court, the Alabama Court of Criminal Appeals, the Alabama Supreme Court and this court.  As noted by the respondent, and demonstrated by this court above, he has not shown that these decisions are erroneous in any regard.

## CONCLUSION

Premised on the foregoing, the undersigned finds that the petitioner's motion for relief and for a stay of execution (doc. 43) is due to be denied.  An appropriate order will be entered.

**DONE**, this 12th day of January, 2011.

_____

KARON OWEN BOWDRE

UNITED STATES DISTRICT JUDGE

---

[2]As noted by the Court of Criminal Appeals, "A murder plea, however, would have left White with a chance to get out of prison someday.  Conversely, a guilty plea to capital murder would result in a sentence of life without parole and no hope of ever being set free."  *Doc. 25*  at 7.  However, the only offer made by the State was one of life without parole in exchange for a plea of guilty to capital murder.